HEMPHILL COMPANY *vs.* ALICE PROVENCHER.

JUNE 11, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is a petition for review under the workmen's compensation act, general laws 1938, chapter 300. Following a hearing in the superior court a decree was entered granting the prayer of the petition. From the entry of that decree the respondent duly appealed to this court.

It is undisputed that on or about September 8, 1944 the respondent, a milling machine operative, was disabled by a form of synovitis of the right wrist and forearm. Item 30 in the schedule under §2, art. VIII, chap. 300, makes synovitis an occupational disease which is treated as a personal injury by accident under that article and chapter. Following such injury a preliminary agreement was entered into with the approval of the director of labor under which the respondent has been receiving $20 a week for total incapacity since September 17, 1944. The present petition was brought to review that agreement, the petitioner contending that the respondent has completely recovered from

her injury, while the latter contends that she is still totally incapacitated for work because of her condition.

The respondent was the only witness to testify at the hearing in the superior court. The medical evidence consisted of doctors' written reports, which were admitted in evidence by agreement of the parties. It appears of record that between September 1944 and May 1945 she was treated or examined by various doctors in Providence and that shortly thereafter she went to the Lahey Clinic in Boston, Massachusetts, for the purpose of determining whether an operation was necessary to correct her alleged condition. It is clear that for a period of about two years after her visit to the Lahey Clinic she was not treated by any doctor. However, she did seek medical advice in July 1947 while the instant case was being heard in the superior court. We will presently refer more directly to the medical evidence.

Before entering petitioner's employ the respondent had worked for more than ten years as a saleslady in a store. She did not seek any kind of work for two years prior to the hearing in the superior court. Her testimony on this point in substance was that the petitioner would not offer her lighter work which she was able to do, and that during an adjournment of that hearing at the instance of the trial justice she sought but was unable to obtain work as a saleslady when she applied for the same. The following question and answer in cross-examination is illustrative of her general attitude with reference to seeking re-employment: "Q. And you have not looked for work for over two years, have you? A. That's right. I feel that the insurance company should give me a job,—after all, I got injured there at Hemphill." It also appears that during the aforementioned period of two years she was married and had a child.

All the doctors agree that the respondent originally had an acute inflammation involving the sheaths of the extensor tendons of the right forearm, medically known as "teno-

synovitis." Respondent's own doctor unconditionally states in his report of March 22, 1945 that in his opinion she was "able to resume her work at this time." The final report on May 1, 1945 of an impartial examiner appointed by the director of labor says that a clinical examination of respondent's right hand, wrist, and forearm was entirely negative; that he could find no cause for the alleged swelling and no residual of such swelling; and that in his opinion she should return to work, preferably at a different job which would not require excessive use of the right hand or wrist. A letter from the Lahey Clinic, dated November 7, 1945 and signed by the doctor who had examined her there, informed the respondent that an operation was "unnecessary" to correct her condition.

While this case was pending in the superior court an impartial examiner was appointed by that court. He reported on April 10, 1947 that his examination of respondent's right hand and wrist disclosed "No abnormality of sensation * * *. Tests of nerve function showed no abnormality, and the reflexes were normal. * * * There was no evidence of residual tenosynovitis." His conclusion was that respondent's complaint of pain and inability to use her hand was "due to a prolonged period of disuse following her original disability." The doctor who examined her during the hearing in the superior court did not testify, but a certificate from him which was put in evidence by agreement states that she was then totally incapacitated and needed an operation.

The final decree of the superior court contains two findings of fact by the trial justice: first, that the petitioner had complied in all respects with the terms of the agreement between the parties; and, secondly, that the respondent was "no longer incapacitated for work as a result of her said injury by accident." It was therefore decreed that the petitioner was relieved from making further payments of compensation under the agreement until further order of the court in accordance with the provisions of the act.

The respondent contends that the second finding is not supported by any legal evidence and therefore constitutes an error of law that is reviewable by this court.

Respondent's contention is based mainly upon her testimony and excludes consideration of all other material evidence in the case. We cannot agree with such contention as it does violence to a record that is clearly open to a different conclusion when *all* the evidence and the reasonable inferences therefrom are fairly considered. It is not our duty to weigh the evidence. In the absence of fraud a finding of fact by a trial justice which is supported by legal evidence is binding on this court by the terms of the act. In the instant case the conflicting medical evidence, when considered in the light of respondent's conduct and general attitude in the matter as hereinbefore set forth, constituted legal evidence to support the second finding of the trial justice. Furthermore, it is pertinent to observe here, as we did in *DeLallo* v. *Queen Dyeing Co.,* 73 R. I. 325, that the workmen's compensation act does not provide health insurance, as such term is ordinarily understood, for the employee.

In the argument before us respondent further contended that since she was disabled by an occupational disease she had no chance of securing employment because art. VIII, §7, of the act requires her to disclose such disablement to prospective employers. The provisions of that section are inapplicable in the circumstances of this case. There is slight evidence that she really sought re-employment, and no evidence that in any such search she was required to disclose her actual or alleged condition of synovitis and that she was refused employment because of such disclosure. A different situation conceivably might arise if, in good faith, she should seek employment and be refused on that ground.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Worrell & Hodge, Lee A. Worrell,* of Counsel, for petitioner.

*William R. Goldberg,* for respondent.

INDUSTRIAL TRUST COMPANY *et al., Trs. vs.*
JOHN H. NOLAN, Atty. Gen.

JUNE 11, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J.   This is a bill in equity for the contruction of a portion of the thirty-third paragraph of the last will and testament of Gertrude E. Guiteras, late of the town of Bristol in this state, deceased.

When the cause was ready for hearing for final decree in the superior court it was certified to this court for our determination in accordance with general laws 1938, chapter 545, §7.   The bill has been brought by the trustees under the will against the attorney general of this state because the complainants allege that such paragraph creates a charitable trust.   *Powers* v. *Home for Aged Women,* 55 R. I. 187.

The attorney general filed an answer in which he neither admitted nor denied the allegations of the bill but left the rights of the state to the protection of the court.

The portion of the thirty-third paragraph with which we are concerned reads as follows:

"* * * to pay over semi-annually on the first business day of January and July in each year forever, or, if in the judgment of my said trustees or the survivor of them, the better results will be attained thereby, to apply for the support, maintenance and general purposes thereof or for the purchase of books written in either the Spanish or English language or both therefor, forever the net amount of said rents, income, dividends and profits arising from said 'Fund C' to such free public library or libraries now existing or that may be hereafter established in the City of Matanzas, in the Republic of Cuba, as my said trustees or the survivor of them may determine and select and if they shall select more than one library as a beneficiary hereof, they, my said trustees or the survivor of them, are hereby authorized to determine the proportions in which said net income, rents, dividends and profits shall be divided and applied among them and they may vary said proportions from time to time, my said trustees being the sole judge of the propriety thereof without the assent or approval of any court, and, as I am making this donation in memoriam of my father, the late Ramon Guiteras, it is my wish that in some way his name may be connected and associated publicly and permanently therewith and I direct my said trustees or the survivor of them to see that my said wish is accomplished * * *."

Complainants allege in their bill that they "are uncertain with respect to their authority and duty under the Thirty-third Paragraph of said will, and a question has arisen as to whether they have the right to apply the net income of said Fund 'C' not only for the support, maintenance, and general purposes of a free public library or libraries in Matanzas, Cuba, but also for the purchase of books, magazines, papers, periodicals and other printed matter for such library or

libraries." They have therefore asked this court to determine whether they have the authority under that paragraph to apply the net income to both objects.

The question thus raised is a narrow one. Substantially it calls for an interpretation only of the following language of the paragraph: " * * * to pay over semi-annually on the first business day of January and July in each year forever, or, if in the judgment of my said trustees or the survivor of them, the better results will be attained thereby, to apply for the support, maintenance and general purposes thereof or for the purchase of books written in either the Spanish or English language or both therefor, forever the net amount of said rents, income, dividends and profits arising from said 'Fund C' to such free public library or libraries now existing or that may be hereafter established in the City of Matanzas * * *."

The testatrix's use of the word "or" in the phrase "to apply for the support, maintenance and general purposes thereof or for the purchase of books" is the reason for the trustees' uncertainty as to the extent of their authority in applying the net income of the fund. Divorced from the context of the sentence in which it appears, that phrase would ordinarily convey the idea that the trustees were authorized to apply the income in either of those ways but not both. However, it ought not to be thus read out of its context, especially in the construction of a will where we are seeking the intention of the testatrix. We should read the phrase in connection with the entire sentence and paragraph in which it appears and give it that meaning which will be consistent with the general intention of the testatrix as expressed in such paragraph. *Bailey* v. *Brown*, 19 R. I. 669, 681, 686; *Perry* v. *Brown*, 34 R. I. 203.

In our opinion her general intention, as expressed in the thirty-third paragraph, is obvious. It clearly appears therefrom that the dominant desire of the testatrix was to donate the income from fund "C" for the benefit of the people of Matanzas, preferably by aiding a free public library or

libraries in that city and in such a way as to provide a memorial of her late father, Ramon Guiteras. But it also appears that such intention was to be given effect provided only that it could be done to the satisfaction of her trustees. She conferred upon them extremely broad powers to that end.

Whether there was a free public library in Matanzas that would be deserving of her bounty she left solely to their judgment, unrestrained by any court. And she further provided that, in the event they found such a worthy library, a diversity of choice was to be left open to them as to the manner in which her bounty should be dispensed in aid of that library. They might apply the income of fund "C" in several different ways: pay it over semi-annually directly to the library; apply it to the support, maintenance, and general purposes thereof; or apply it for the purchase of books written in either the Spanish or English language or both. The choice of those methods was left solely to the judgment of the trustees so that better results might be attained if possible. Those are indeed very broad powers and they disclose the extreme confidence which the testatrix reposed in her trustees.

Having thus given them such broad discretionary powers, uncontrolled or unrestrained by any court, the question arises: Did the testatrix nevertheless intend merely by reason of her use of the disjunctive "or" in the language quoted to restrict her trustees to a choice between an application of the income to the support, maintenance, and general purposes of the library or to the purchase of books? We think not. On the contrary we think that the extreme confidence in her trustees was intended to operate in this matter also and that her language can be reasonably construed to that effect notwithstanding her use of the disjunctive "or" to express it.

*Ralph M. Greenlaw, Edwin J. Tetlow,* of Counsel, for complainants.

*John H. Nolan,* Attorney General, *John F. O'Connell,* Special Counsel, for respondent.