117 N.J. Super. 176 (1971)
283 A.2d 923
ROSE THERING, PLAINTIFF,
v.
AGNES REINKEMEYER AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, A CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 22, 1971.
*178 Mr. Samuel A. Gennet for the Plaintiff (Messrs. Gennet & Methfessel, attorneys).
Mr. Donald B. Connolly for the Defendants (Messrs. Oppenheim and Oppenheim, attorneys).
BYRNE, J.S.C.
This case has come before the court on cross motions by both plaintiff and defendant for summary judgment on two issues. The issues involved are whether defendant's insurance company is liable to the plaintiff under the two forms of coverage that were contained in defendant's policy, viz., medical payment coverage annd liability coverage. The action arose from an automobile accident.
Defendant contends both she and plaintiff are co-employees. Plaintiff says that while this may be so in the theological sense, it is certainly not so within the provisions of Title 34 of the New Jersey Statutes Annotated. Both the plaintiff and defendant are nuns within religious organizations set up under the hierarchy of the Catholic Church. The defendant, Sister Agnes Reinkemeyer, is employed as a member of the faculty of Seton Hall University. The plaintiff, Sister Rose Thering, is a member of the Sisters *179 of Saint Domenic of Racine, Wisconsin. Plaintiff had been working in the area of Catholic-Jewish relations in the Chicago area prior to coming to Seton Hall. While still in Chicago, the plaintiff was interviewed by a Monsignor Oesterreicher who is the Director of the Institute of Judeo-Christian Studies which is located at Seton Hall. Subsequently, plaintiff was offered a contract to come to Seton Hall to act as the Academic Coordinator of the Institute of Judeo-Christian Studies for the academic year commencing in September 1968 and ending in June 1969. The offer was accepted by plaintiff who arrived at Seton Hall in August of 1968 in order to assume the position. Prior to her arrival arrangements had been made for her to reside in a house owned and furnished by the University at 107 Woodbine Avenue which is located close to the campus. Plaintiff was not under any requirement to live there and was free to reside wherever she pleased but chose to accept this location because of its convenience. The understanding was that the University was to receive a rental of $200 per month of which plaintiff paid one-third since there were two other nuns living there, one of whom was the defendant.
After the plaintiff had been residing at the home for approximately one month, she and the defendant, Sister Reinkemeyer, found that they did not care for certain bedspreads that had been furnished to them by the University as part of the consideration for the rent, and they decided to exchange them at the store where they had been purchased. It was on the trip to the store for this purpose and also to possibly do some shopping that the accident occurred. The two sisters were on their way to the store in the defendant's car with the defendant driving when suddenly the defendant lost control of the car and it swerved into a utility pole causing the plaintiff to be severely injured. At the time of this accident the defendant had an insurance policy issued by State Farm Mutual Automobile Insurance Company and said policy included both liability coverage and medical payment coverage.
*180 Through their respective motions, both parties have asked for summary judgment both as to the medical payment and as to liability. Plaintiff's contention is that she is a third party beneficiary of the insurance contract as to the medical payment and that as to the liability coverage, there is a presumption of negligence under the doctrine of res ipsa loquitur when a car leaves the road, which according to the contention of plaintiff should prevail since defendant has not introduced any references to any other intervening causes. On the other hand, the insurance company, through the defendant, relies on the contention that plaintiff is not entitled to either medical payment or liability because she is allegedly a co-employee of defendant and, therefore, barred by N.J.S.A. 34:15-8.
In determining whether or not plaintiff is entitled to the medical payment coverage it is necessary to examine both N.J.S.A. 34:15-8 and 17:28-1. The first of these two statutes reads in part:
If an injury or death is compensable under this article [Workmen's Compensation], a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.
The second of the two statutes reads in part:
Any policy of liability insurance * * * may contain a provision for payment on behalf of the injured party or for reimbursement of the assured for payment of medical, hospital, surgical and funeral expenses incurred, as a result of an accident, irrespective of legal liability of the assured * * *.
Therefore, while it might appear from the first of these statutes that plaintiff would be barred from holding defendant liable, it can now be seen that the later statute authorizes the payment of medical expenses regardless of the assured's position of liability. This being the case with the policy at hand, it is not necessary to determine if defendant *181 is liable and plaintiff is entitled to be treated as a beneficiary under the medical payment coverage. Under these circumstances summary judgment is appropriate.
The "co-employee" defense cannot prevail because "the immunity attaches to the co-employee only when the co-employee is acting in the course of his employment." Konitch v. Hartung, 81 N.J. Super. 376, 382 (App. Div. 1963). It is necessary to determine whether or not they were acting within the scope of their employment at the time of the accident, for if they were not, then the co-employee defense is inapplicable, but if they were then it becomes necessary to determine if they were actually co-employees in the first place.
In the case of Cavalcante v. Lockheed Electronics Co., 85 N.J. Super. 320 (Cty. Ct. 1964), it was stated that:
[A]n accident arises `in the course of' employment when it occurs (a) within the period of employment, (b) at a place where the employee may reasonably be, and (c) while he is fulfilling the duties of the employment, or doing something incidental to it. [at 324]
The critical section of this test is part (c), and since they were clearly not fulfilling a duty of their employment, the question is whether they were doing something incidental to it. In order to show that the occurrence was incidental to the employment it must be shown that there was a relationship to it, but here, although both parties worked at the campus, and may even have been co-employees, there is absolutely no indication that the happening of the accident could be tied into the employment relationship picture. The pursuit of the bedspreads simply did not bear upon their employment standing. Both parties paid rent to the university for the privilege of living in the house which was not on the campus itself. It should also be noted that plaintiff has stated that she was not compelled to live there but rather was free to reside wherever she chose while, at the same time, there was no statement on the part of defendant *182 to indicate that she had to live there. The logical conclusion to be drawn from these facts is that the relationship between the parties and the university, in regards to the house, was one of landlord and tenant, and not one of employment. Furthermore, the general rule as stated in 1 Larson, Workmen's Compensation, § 24.40 at 438-439, is that "When residence on the premises is merely permissive, injuries resulting from such residence are not compensable under the broad doctrines built up around employees required to reside on the premises."
One method of bringing acts remote to the employment into the category of being within the scope of employment as incidental to it, is the mutual benefit doctrine. This doctrine is employed to classify such activities as being reasonably incidental to the employment and therefore brings them within the scope of employment where there is a mutual benefit to both employer and employee. See Barbarise v. Overlook Hospital Ass'n, 88 N.J. Super. 253 (Cty. Ct. 1965), where a nurse was injured while off-duty in a residence provided by the hospital where she worked. She was not required to live in the residence and the injury was not related to her work. Nevertheless, the court found that such residence provided mutual benefit to both employer and employee, and while she was making use of such residence she was acting reasonably incidental to her employment. In the instant case, however, the facts are clearly discernible. Here it is not simply a question of the residence being mutually beneficial, but rather the issue goes to the extent that the doctrine can be used to cover. If it can be employed to cover the exchange of bedspreads, one can only wonder how many infinite variations others might come up with.
The Workmen's Compensation Act is remedial in nature and the cases have generally held that a liberal interpretation should be applied in construing it. Cuna v. Board of Fire Comm'rs, Avenel, 42 N.J. 292, 298 (1964); Diaz v. Newark Industrial Spraying, Inc., 35 N.J. 588, 590 *183 (1961); Volek v. Deal, 83 N.J. Super. 58, 63 (App. Div. 1964). Neverthless, there is an extent beyond which even a liberal interpretation cannot justifiably go. In Anderson v. Chatham Electronics, 70 N.J. Super. 202 (App. Div. 1961), the court held that an employee who was injured when returning from a doctor's office to which she went for a medical clearance slip following surgery so that she could return to work was too remote to be considered incidental to her employment.
Although a factual issue may exist with regard to the existence of a common employer, none exists with respect to "the course of employment." The accident did not arise out of or occur in the course of their employment.
The accident here occurred when defendant's automobile drove off the road and struck a pole. Driving a car off the roadway is evidence of negligence. Summary judgment is sought on the basis of demands for admissions which admit that defendant drove off the highway and that no other negligence contributed to the happening of the accident. Defendant is answering this motion makes no suggestion of any defense or any answer to the inference of negligence arising from the undisputed fact that the car was driven off the highway. See Bevilacqua v. Sutter, 26 N.J. Super. 394 (App. Div. 1953).
Under the circumstances where no real factual dispute exists or is posited, a summary judgment as to liability is appropriate.