131 N.J. Super. 314 (1974)
329 A.2d 592
JULIA R. MADARAS, ADMINISTRATRIX AD PROSEQUENDUM AND GENERAL ADMINISTRATRIX OF THE ESTATE OF JOHN J. MADARAS, DECEASED, AND JULIA R. MADARAS, INDIVIDUALLY, AND PETER DE NICOLA AND ROSEMARIE DE NICOLA, PLAINTIFFS,
v.
ELSIE CHINIGO, ADMINISTRATRIX OF THE ESTATE OF ANDREW N. CHINIGO, CESAR GONZALEZ AND BARBARA GONZALEZ, INDIVIDUALLY AND T/A CEBARB TRUCKING AND LEASING CO., AND ONTERO GONZALEZ, DEFENDANTS. ELSIE CHINIGO, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF ANDREW CHINIGO, DECEASED, PLAINTIFF,
v.
CESAR GONZALEZ AND BARBARA GONZALEZ, INDIVIDUALLY AND T/A CEBARB TRUCKING AND LEASING CO., AND ONTERO GONZALEZ, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 5, 1974.
*315 Mr. Abraham S. Bernstein for plaintiffs in the Madaras case (Messrs. Barr, Kaplus & Friedland, attorneys).
*316 Mr. Donald F. Stevens for defendant Chinigo in the Madaras case (Messrs. Chasan, Leyner, Holland & Tarrant, attorneys).
THURING, J.S.C.
This is a motion on behalf of plaintiffs Julia R. Madaras, administratrix ad prosequendum and general administratrix of the estate of John J. Madaras, deceased, Julia R. Madaras individually, and Peter De Nicola and Rosemarie De Nicola (per quod) against defendant Elsie Chinigo, administratrix of the estate of Andrew N. Chinigo.
Plaintiffs move to strike the third separate defense of the amended answer of defendant Elsie Chinigo who contends that a coemployee relationship existed between plaintiff Peter De Nicola, plaintiff's decedent Madaras and Andrew N. Chinigo at the time of the accident. All were occupants of a vehicle driven by Andrew N. Chinigo at a time when Chinigo's vehicle was in a collision with a truck on the New Jersey Turnpike. The accident occurred on April 11, 1973 while they were on their way home from work. Plaintiffs contend that there was no coemployee relationship existent at the time of the accident.
John Madaras, Peter De Nicola and Andrew N. Chinigo were all employed by Mundt Perforations Inc. at its South Plainfield plant on the date of the accident. When the company planned to move its operation from Jersey City to South Plainfield it agreed to pay $3.50 a week as a travel allowance to each employee for a three-month period after the employee commenced work at the South Plainfield plant. The employer also agreed to pay up to $200 as a moving cost allowance to the employees who chose to move to the new plant's area. Prior to the move a contract was entered into between the employees, the union and the company relative to a new pay schedule. Such added benefits were received by all employees, i.e., former Jersey City employees and those employees joining Mundt's operation for the first time in South Plainfield, New Jersey.
*317 De Nicola's travel allowance ended March 11, 1973, one month prior to the accident. Madaras was to receive his final weekly travel allowance for the week ending April 15, four days after the accident.
Plaintiffs rely upon Ricciardi v. Aniero Concrete Co., Inc., 64 N.J. 60 (1973). That case held that the employer-employee relationship continues when an employee is going to or coming from work, provided the employer reimburses the employee for all or substantially all of the total travel expenses involved. It also held that where an employee is reimbursed for only 40% of his traveling expenses, then the employee is not entitled to workmen's compensation benefits for injuries sustained while going to or returning from work.
Defendant Chinigo answers that the facts spell out an exception to the going-and-coming rule generally prevailing in workmen's compensation situations, in that plaintiffs were injured in an accident arising out of and in the course of employment, barring suit against a coemployee. Defendant Chinigo relies upon the arrangements entered into between the work force of the company, the employer and the union in an attempt to spell out a benefit flowing to the employer-employee relationship. Defendant in effect says that the circumstances present evidence that the trip on the fatal day served a purpose reasonably incidental to the duties of the employees injured and their employment, thus making the accident arising out of and in the course of employment, precluding the suit by plaintiffs.
At the outset we recognize that there must exist a mutual benefit to both the employer and employee to bring the act remote to the employment within the scope of the employment. Thering v. Reinkemeyer, 117 N.J. Super. 176 (Law Div. 1971).
Defendant Chinigo relies heavily on Williams v. Remco Industries, 118 N.J. Super. 481 (App. Div. 1972), certif. den. 61 N.J. 163 (1972), to support her position. The court finds that case distinguishable. In Williams an employer-employee relationship was established on the ground that the employer *318 had supplied his employees daily with bus service, and plaintiff was injured while aboard a bus returning from work. There the court found that the arrangement was serving an incidental and beneficial interest to the employer at the time of the injury. It is interesting to note that the court further concluded that "[t]he transportation arrangement, under the existing circumstances, inured to their joint benefit making petitioner's injuries compensable" (at 484; emphasis supplied).
The clearly distinguishing factor between Williams and the instant case is that here no joint or mutual benefit flowed from the employees' car pooling arrangement. The employer in Williams provided the total benefit to the employee, i.e., the daily bus service. The court here finds that the transportation arrangement entered into freely between the coemployees did not have its origin in any arrangement with the employer. Additionally, the court feels that the case of Ricciardi, supra, is clearly on point. It is stipulated that the travel arrangements of the employees in this case represented a weekly travel aggregate of 300 miles. The court takes judicial notice that 11¢ a mile is considered an average proper reimbursement for the utilization of a car, and simple arithmetic tells us that 300 miles times 11¢ equals $33 in cost for travel a week per employee where he is using his own vehicle. It is uncontroverted that Peter De Nicola's allowance of $3.50 had been terminated prior to the accident. With respect to employee Madaras, his temporary travel allowance of $3.50 a week certainly falls far short of our Supreme Court's mandate that the employer must reimburse the employee for all or substantially all of the travel expenses involved.
Further, the court does not accept the position of defendant Chinigo in her attempt to spell out a benefit to the employees on the ground that there was little done by the employer to recruit other employees in the area of its relocation, thus evidencing the employer's concern for the retention of its Jersey City plant employees. The employer also points to what it contends were employee beneficial contract wage *319 changes made in consideration of its Jersey City employees' continuation of employment at the new location. Depositions submitted to the court indicate that extensive employee recruiting was done by the employer in the South Plainfield area through newspapers, word of mouth and the services of the New Jersey State Employment Agency.
Plaintiffs respond to the employer's contentions that the wage rate change was a benefit to the employees by showing that all employees of Mundt, whether they be those formerly employed at the Jersey City plant or those later hired for employment at the South Plainfield plant under the contract entered into between the union and Mundt, received the same pay for the same type employment.
It is clear that this does not evidence any special benefit to the employees injured in the accident of April 11, 1973 who had previously worked in Jersey City. Defendant's reliance on the renegotiation of the contract as a benefit to the plaintiffs and the alleged transfer of the Jersey City employees as a benefit to the employer is unfounded.
In Orsinie v. Torrance, 96 Conn. 352, 113 A. 924 (Sup. Ct. Err. 1921), a contract of employment which included a provision requiring the employer to either furnish to its employees transportation to and from work or to add the cost of transportation to the prevailing daily wage of the employees was held not to establish an employer-employee relationship during the time the employees traveled to and from work. The court found that the employees were not obligated to use the mode of transportation, i.e., the trolley for which the travel allowance was made, but could choose to walk or ride in another's vehicle. The court distinguished Swanson v. Latham & Crane, 92 Conn. 87, 101 A. 492 (Sup. Ct. Err. 1917), which held that where the employer furnished the transportation as part of the contract of employment and the injury arose out of the hazard of the furnished transportation, an employer-employee relationship existed at the time of the accident.
*320 The court finds that there was no firm reliance on the part of the employer for its continued operation based upon the continuation of its Jersey City employees to the extent defendant would assert. Additionally, the court fails to find any substantial benefit flowing to plaintiffs by virtue of the transfer of the employer's business. It seems more likely that it became an added burden rather than a benefit to the injured employees to travel 300 miles a week. Added to that is the fact that the company's meager allowance toward travel expenses, if any, was greatly below the standard relied upon in Ricciardi, supra.
The court finds that no employer-employee relationship existed at the time of the accident in question. The motion will be granted striking the third separate defense of Elsie Chinigo.