ROBERT BRIGGS, PETITIONER-RESPONDENT, v.
AMERICAN BILTRITE, RESPONDENT-APPELLANT.

Argued April 4, 1977—Decided July 25, 1977.

186

*Mr. Roland M. Formidoni* argued the cause for appellant (*Messrs. McLaughlin & Cooper,* attorneys).

*Mr. Edward B. Meredith* argued the cause for respondent (*Messrs. Meredith, Meredith & Chase,* attorneys).

The opinion of the court was delivered by

PASHMAN, J. We granted the petitioner's motion for direct certification in this case pursuant to *R.* 2:12–2(a), 74 *N. J.* 155 (1977), to consider it with *Watson v. Nassau Inn,* 74 *N. J.* 155 (1977) which was also decided today. The judge of compensation awarded benefits to petitioner on the basis of the "special errand" exception to the "going and coming" rule. Observing that *Watson* projected the question of whether the going and coming rule should be abandoned, the parties suggested that our decision there, if answered affirmatively, would be dispositive in this case. Although we noted the persistent criticisms of the rule in *Watson,* 74 *N. J.* at 155, we continued to adhere to the rule generally and reversed on other grounds the judgment of the Appellate Division, which denied compensation. In the instant case we find that the compensation judge was correct in awarding workers' compensation benefits.

Petitioner Robert Briggs was employed by defendant American Biltrite as a tow motor operator in its tile manufacturing plant in Trenton, New Jersey. He worked in the "sip stick" department, which was one of eight departments in the plant. Since his department had been running behind schedule for several months, he had been requested to work overtime on Sundays. On a few occasions other departments had also been required to work overtime, but petitioner's department was usually the only one at work on Sundays.

Defendant maintained a parking lot adjacent to the plant where petitioner and other employees were permitted to park their cars. Petitioner sometimes drove other employees to work in his car, but he usually travelled alone. Although he was unfamiliar with the availability of public transportation on Sundays, his counsel submitted a bus schedule of the Mercer County Improvement Authority which indicated that the last bus on Sunday evenings completed its route before 11 P.M., when his shift ended.

On Friday, May 31, 1974, petitioner was sent home early because of an equipment breakdown. He was scheduled to work the next day, but he telephoned the plant and reported that he was sick. On Sunday, he left his home, intending to work the 3 P.M. to 11 P.M. shift. He was injured when another car collided with him at an intersection about two blocks from the plant. As a result of the accident, he suffered injuries which prevented him from working for the next three months. The judge of compensation found permanent partial disability of 7-½%, and awarded benefits which defendant has not challenged on this appeal.

"The Workmen's Compensation Act is humane social legislation designed to place the cost of work-connected injury upon the employer who may readily provide for it as an operating expense." *Tocci v. Tessler & Weiss, Inc.*, 28 *N. J.* 582, 586 (1959). The statutory test for compensation is broad in scope, entitling an employee to benefits "for personal injuries * * * arising out of and in the course of his employment," *N. J. S. A.* 34:15–7. Hence, judicial interpretations of the particular terms in the statutory test have been expansive, in keeping with the remedial purposes of the act. *Thornton v. Chamberlain Manufacturing Corp.*, 62 *N. J.* 235, 238–39 (1973).

For an injury to arise out of employment within the meaning of the act, it is not necessary that the cause of the accident be peculiar to the employer's enterprise. *Geltman v. Reliable Linen & Supply Co.*, 128 *N. J. L.* 443, 449 (E. & A. 1942). A sufficient causal connection between the employment and the specific accident exists when the employee's injury is the result of a risk "which might have been contemplated by a reasonable person as incidental to his employment." *Brighton v. Rumson*, 135 *N. J. L.* 81, 84 (Sup. Ct. 1947).

Since the employer necessarily envisions that his employees will have to travel to and from work, there is an obvious link between an automobile accident during such travel

and the employment relationship.[1] *See Bergman v. Parnes Brothers*, 58 *N. J.* 559, 563–64 and n. 2 (1971). If the petitioner had not been scheduled to work overtime on that Sunday afternoon, he would not have been required to subject himself to the risks of travelling on the public highways. *See Hornyak v. Great Atlantic & Pacific Tea Co.*, 63 *N. J.* 99, 108 (1973).

The more troublesome question is whether this accident also arose "in the course of" employment. That phrase has occasioned numerous decisions, in large part because of dissatisfaction with the subordinate doctrine which denies compensation for injuries during an employee's daily trip to and from his place of work. *See, e. g., Levine v. Haddon Hall Hotel*, 66 *N. J.* 415 (1975); *Hornyak v. The Great Atlantic & Pacific Tea Co.*, 63 *N. J.* 99 (1973); *Bergman v. Parnes Brothers, Inc.*, 58 *N. J.* 559 (1971); *Ricciardi v. Damar Products Co.*, 45 *N. J.* 54 (1965). While continuing to adhere generally to the going and coming rule, see *Watson v. Nassau Inn, supra,* 74 *N. J.* at 155, we have nonetheless emphasized that it should not override the basic question of whether the employee is serving an incidental interest of his employer at the time of injury. *O'Brien v. First Camden Nat. Bank & Trust Co.*, 37 *N. J.* 158, 163 (1962). Thus, it is no longer true that the rule applies to off-premises trips during an employee's lunch break where the employer permits such departures and there is no evidence of an abandonment of employment. *Wyatt v. Metropolitan Maintenance Co.*, 74 *N. J.* 167 (1977); *Hornyak v. The Great Atlantic & Pacific Tea Co.*, 63 *N. J.* 99 (1973). Nor does it bar compensation if the employee leaves the place of employment tem-

---

[1]Under the "positional risk" or "but for" test of causation which has been adopted in this State, an injury arises out of employment if the employee's duties and conditions of employment bring him to the place where he is injured at the time of the occurrence. *See White v. Atlantic City Press*, 64 *N. J.* 128, 139 (1973); *Howard v. Harwood's Restaurant Co.*, 25 *N. J.* 72, 83 (1957); *Gargiulo v. Gargiulo*, 13 *N. J.* 8, 12–13 (1953).

porarily during an enforced work lull, *Bergman v. Parnes Brothers, Inc., supra,* or if his duties are such that he is realistically "on call" while away from work. *Paige v. Rahway,* 74 *N. J.* 177 (1977); *Jasaitis v. Paterson,* 31 *N. J.* 81 (1959).

As these examples indicate, the general rule now has a rather limited applicability, extending only to those routine daily trips to or from an employee's fixed place of business at specified hours at the beginning or end of the day. Absent special circumstances which suggest a connection with employment, such daily trips are not compensable under the act. This formulation of the rule concededly owes as much to administrative convenience and judicial manageability as to logic or policy.[2] *Cf. Ricciardi v. Aniero Concrete Co.,* 64 *N. J.* 60, 63 (1973). But if "[t]here must come a time when the employee is on his own" during trips to and from work, *Gullo v. American Lead Pencil Co.,* 119 *N. J. L.* 484, 486 (E. & A. 1937), and thus not be covered, we think it should be limited to travel which has no special circumstances suggesting particular benefits to the employer.

Petitioner cites three factors which place his Sunday afternoon trip to work beyond the scope of the rule. First, the location of the plant virtually invited employees to commute by car and thus subjected them to a "daily run [through] the gauntlet of highway traffic and its attendant hazards." Second, his department was the only one in the plant which was required to work overtime on that Sunday. Finally, because there was no public transportation available

---

[2]These practical considerations of administration, coupled with the equally important but often unstated fears of expanded coverage, constitute the strongest arguments for retention of the rule at this point. See a vigorous development of this line of argument by a leading commentator on the subject. 1 Larson, *The Law of Workmen's Compensation* (1976 Supp.), § 15.53, at 1001–1003; *but see* Horovitz, "Worldwide Workmen's Compensation Trends," 59 *Ky. L. J.* 37, 59 (1970) ; Pound, "Comments on Recent Workmen's Compensation Cases," 15 *NACCA L. J.* 45, 75, 87 (1955).

at 11 P.M. when his shift ended, he needed a car to get to work.

We think that the second factor is determinative in this case. Although petitioner had been asked to work overtime on Sunday on various occasions in prior months, there was no evidence to suggest that such work was a regular, ongoing feature of his employment. The employer's request for overtime work followed an equipment breakdown on the previous Friday. Moreover, there was no indication that petitioner's contract of employment required him to work on Sundays whenever the employer scheduled an overtime shift.

Had this injury occurred while petitioner was driving to or from a function connected with or sponsored by his employer, it is clear that his trip would have come within the "special errand" exception to the going and coming rule. See, e. g., *Mikkelsen v. N. L. Industries,* 72 *N. J.* 209, 218 (1977) (union meeting) ; *Strzelecki v. Johns-Manville,* 65 *N. J.* 314, 319 (1974) (employer-subsidized course of study) ; *Ricciardi v. Damar Products Co., supra* (company picnic). We disagree with the suggestion that this trip does not fall within this exception because it merely served to ensure petitioner's presence at work, as would any other daily trip.

In *Binet v. Ocean Gate Board of Education,* 90 *N. J. Super.* 571 (App. Div. 1966), the claimant was a principal whose fatal car accident occurred on the way home from an evening P.T.A. meeting at his school. Such meetings were held once a month and the decedent's attendance was considered desirable, if not compulsory, but the court held that his presence was a special service which was excepted from the "going and coming" rule. *Id.* at 574.

In *Ryan v. St. Vincent DePaul Roman Catholic Church,* 41 *N. J. Super.* 206 (App. Div. 1956), a church sexton was struck by a car as he was walking to the parish rectory to pick up keys so that he could open the church on the following morning. The court upheld an award of compensation based on the special nature of the sexton's evening trip, distinguishing *Moosebrugger v. Prospect Presbyterian Church,*

12 *N. J.* 212 (1953) where we denied compensation on similar facts. 41 *N. J. Super.* at 212.

We think that this case presents a similar instance in which the employee's attendance at his usual place of work at a time outside of the normal work week constitutes a special service to the employer. In such a setting, the going and coming rule should not bar compensation.[3]

Defendant has referred us to decisions in other jurisdictions which suggest that trips to and from work at unusual hours are not "in the course of" employment unless the trips themselves constitute part of the service to the employer. Some are at odds with decisions of this Court. *Compare O'Donohue v. Inredeco,* 162 *Conn.* 627, 295 *A.* 2d 567 (1972) *with Hornyak v. Great Atlantic & Pacific Tea Co., supra,* and *Bergman v. Parnes Brothers Inc., supra.* Others involve employees whose unusual hours of employment were part of a well established routine. *See, e. g., Fife v. Allied Super Markets, Inc.,* 284 *So.* 2d 561 (La. App. 1973) ; *but see Bengston v. Greening,* 230 *Minn.* 139, 41 *N. W.* 2d 185 (1950). As noted, we discern no such clearcut evidence here. In light of this finding, we think that proper regard for the remedial design of the act dictates against an application of the going and coming rule to deny workers' compensation benefits to petitioner.

The decision of the judge of compensation is affirmed.

---

[3]Petitioner's other arguments, although supportive, are not sufficient to distinguish this trip from any other daily excursion to work. He was exposed to hazards which were common to the travelling public, not just defendant's employees, *see Daly v. Edwards Engineeering Corp.,* 107 *N. J. Super.* 183 (App. Div. 1969), aff'd o. b. 54 *N. J.* 524 (1969), and his use of a car was unaffected by the unavailability of public transportation, *see Begley v. Inter. Terminal Operating Co., Inc.,* 114 *N. J. Super.* 537, 542 (Cty. Ct. 1971), certif. den. 61 *N. J.* 155 (1972). Nor was there any showing that a car was needed for the performance of petitioner's duties. *See White v. Atlantic City Press, supra,* 64 *N. J.* 128, 134 (1973).

Schreiber, J., dissenting. Where an employee has been regularly scheduled for Sunday employment at his usual job for a four to five month period, his trip to the plant on one such Sunday cannot rationally be considered a special errand. The majority's holding to the contrary conflicts with all prior decisions of this Court and is not supported by authorities elsewhere.

The undisputed facts establish that the petitioner worked as a tow motor operator in the respondent's tile manufacturing plant in Trenton. He lived about three to four miles away and ordinarily drove to work. His department had been behind in production for some time and he had been called in regularly on Sundays for months. While driving to work on Sunday, June 2, 1974, he was injured in an automobile accident. Compensation was awarded by the Judge of Compensation.

The majority holds that since the employee's department was the only one in the plant required to work overtime on that Sunday, his automobile drive to the plant became a special errand. 74 *N. J.* at 190–191. The logic of this reasoning is difficult to follow. Apparently, if the entire plant had been in operation on that day, the petitioner's trip would no longer constitute a special errand. Why should that make any difference? What if petitioner's department constituted 90% of the work force? (The record is barren of any information on the number of employees in petitioner's department and in the plant.) The special errand exception has always envisaged a particular isolated trip expressly and specifically designated by the employer.

Larson has defined the special errand rule to be limited to off-premises journeys, when the trouble and time of making the journey or the special hazard or urgency of making the trip under the particular circumstances may be viewed as an integral part of the employment service. 1 Larson, *The Law of Workmen's Compensation* § 16.10, at 4–86 to 4–88 (1972). The journey here was the usual one made during the regular work week; the time relationship be-

tween the trip and the work was normal; the employee performed his customary work; he was not subjected to any unusual hazards during the journey; and the overtime work was obviously contemplated as part of petitioner's routine employment. Analysis of the cases in this State supports without reservation the conclusion that the employee Briggs was not on a special errand when driving to work.

The majority relies upon two cases, *Binet v. Ocean Gate Board of Education,* 90 *N. J. Super.* 571 (App. Div. 1966), certif. den. 47 *N. J.* 243 (1966) and *Ryan v. St. Vincent dePaul Roman Catholic Church,* 41 *N. J. Super.* 206 (App. Div. 1956). Both of these cases involved special trips by employees on assignments which did not involve their regular duties. In *Binet,* a school principal was injured one evening on his return from a P. T. A. meeting. In *Ryan* a church sexton was struck by an automobile while walking one evening to the rectory to obtain keys so that he could open the church the next morning. This was not a regularly scheduled duty or trip.

In *Moosebrugger v. Prospect Presbyterian Church,* 12 *N. J.* 212 (1953), the special errand exception was held to connote the idea that the service rendered was out of the ordinary, unusual and not contemplated under the terms of the employment. The special errand principle cannot and does not come into play when the parties have considered the act of going to and coming from work as part of the employment service.

Judge Clapp in *Ryan* pointed out the distinction in the following manner:

So where an employer requests an employee to make a special trip in order to perform a special errand or service, the trip itself enters into the employer's contemplation and quite naturally would or should be looked upon by the parties as a part of the service for which the worker has been employed; hence it comes within the course of the employment. On the other hand, as held in *Moosebrugger*, where a church calls upon the sexton to perform some service regularly in the evening, involving a trip from his home back to his regular place of employment and where this service in fact con-

stitutes a part of his routine work along with his work during the day, the parties are presumed to place that trip upon the same footing as that occupied by the trip to and from work in the daytime. [41 *N. J. Super.* at 211–212]

There is no justification for awarding compensation in this case unless one were to adopt a philosophy consistent with the elimination of the going and coming rule. Using the tests set forth in the dissenting opinion in *Wyatt v. Metropolitan Maintenance Co.,* 74 *N. J.* 167, 172 (1977), I can only conclude that the petitioner's accident was noncompensable.

I would reverse.

Justice CLIFFORD joins in this opinion.

*For affirmance*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN and HANDLER—5.

*For reversal*—Justices CLIFFORD and SCHREIBER—2.