EILEEN WUNSCHEL, GENERAL ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF CHRISTIAN WUNSCHEL, DECEASED, AND RAE ANN WUNSCHEL, AN INFANT BY HER GUARDIAN AD LITEM, EILEEN WUNSCHEL, PLAINTIFFS-APPELLANTS, v. CITY OF JERSEY CITY, A BODY CORPORATE AND POLITIC, A.A.A. UNIFORMS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND ARNOLD SACHS, DEFENDANTS-RESPONDENTS.

CITY OF JERSEY CITY, A BODY CORPORATE AND POLITIC, PLAINTIFF-RESPONDENT, v. APPALACHIAN INSURANCE COMPANY, A FOREIGN CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY, AND ARNOLD SACHS, DEFENDANTS-RESPONDENTS.

EILEEN WUNSCHEL, PETITIONER-APPELLANT, v. CITY OF JERSEY CITY, RESPONDENT-RESPONDENT.

EILEEN WUNSCHEL, PETITIONER-RESPONDENT, v. A.A.A. UNIFORMS, RESPONDENT-APPELLANT.

Argued March 6, 1984—Decided July 3, 1984.

*Sheldon Schiffman* argued the cause for appellant A.A.A. Uniforms in the workers' compensation action (*Michals, Wahl, Silver & Leitner,* attorneys).

*Alan L. Krumholz* argued the cause for appellants Eileen Wunschel, etc., et al., and respondent Eileen Wunschel (*Pearlman, Krumholz, Horn & Schechtman,* attorneys).

*Robert E. Barry,* Assistant Corporation Counsel, argued the cause for respondent City of Jersey City (*John C. Kennedy,* Corporation Counsel, attorney).

*Eugene A. Cross* argued the cause for respondent Arnold Sachs (*Franchino, Lenahan & Cross,* attorneys).

*Thomas T. Chappell* argued the cause for respondent Appalachian Insurance Company (*Lamb, Chappell, Hartung, Gallipoli & Coughlin,* attorneys; *Mary B. Rogers,* on the brief).

*Paul A. Spina, Jr.,* argued the cause for respondent A.A.A. Uniforms, Inc., in the wrongful death action (*McDermott, McGee & Ruprecht,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

This case concerns the relationship between Compensation Court and Superior Court. It arises due to the courts' conflicting decisions on the same issue of a worker's employment status at the time of his death. Even though the proofs differed in the two courts, we hold that their procedures should be molded to avoid such an inconsistency. We reverse the judgments below.

The case arises from the tragic death of a Jersey City police officer. The central issue is whether the fatal shooting arose in the course of his employment by Jersey City. His widow, plaintiff Eileen Wunschel, filed claims in the Division of Workers' Compensation and also instituted a wrongful death suit in the Superior Court. For ease of reference, we refer to only these two cases, although in the Superior Court an insurance coverage case was consolidated with the wrongful death claims. The proofs varied slightly but the following facts appear common to both cases.

Christian Wunschel was a member of the Jersey City Police Department, assigned to the Bureau of Housing Security. Wunschel and defendant Arnold Sachs were a plainclothes team and normally worked the 6:00 p.m. to 2:00 a.m. shift. They worked that shift the day prior to the accident, and were scheduled to work the same shift the following day, June 27, 1975. Due to shift changes, their tour of duty was re-scheduled for 12:00 p.m. to 8:00 p.m. Sachs had been contacted earlier in the day and started work at noon with Sergeant Charles Gallagher, who filled in for Wunschel. Wunschel's supervisor was originally unable to contact him to advise him of the change, but eventually reached him in the early afternoon.

Sachs and Gallagher then met Wunschel at headquarters about 1:00 p.m. Gallagher told Wunschel that he was going off duty at 4:00 p.m., and that Wunschel would have to be prepared for work after that. Wunschel agreed that he would be able to go on duty when needed and told them that he could be picked

up at A.A.A. Uniforms. This shop, located on Sip Avenue in Jersey City, a few minutes from the station house, specialized in selling service uniforms, weapons, and related items to public safety officers. There was evidence that Wunschel was employed there as a salesperson in his off-duty hours, and that Sachs had picked him up there before.

Sachs was delayed after 4:00 p.m. at headquarters in writing up his tour of duty with Gallagher. He left the station house about 5:00 p.m. to pick up Wunschel at A.A.A. to continue working. Here the versions differ in detail but not in their general outline.

When Sachs went into A.A.A., Wunschel was behind a sales counter. A police officer from Garfield, Michael Dudziak, was in front of the counter. Sachs told Wunschel that he was ready to go, and Wunschel told him to wait a minute. In the Law Division, Sachs testified that he told Wunschel, "he's got to get his a— out of there because we are on the clock." But Sachs did stop to have a cup of coffee and to look at pearl pistol grips that were for sale in the store. Wunschel was still behind the counter. In the course of removing his gun from its holster to try out the pearl grips, Sachs discharged his revolver, striking Wunschel in the throat. Wunschel died of the wound.

Wunschel was survived by a wife and child. In July 1975, Eileen Wunschel filed claim petitions in compensation for survivor's benefits against both A.A.A. and Jersey City, under *N.J.S.A.* 34:15–7. In January 1977, she filed a wrongful death action against Sachs, Jersey City, and A.A.A., alleging Sachs' negligence in causing the revolver to discharge, the city's negligence in hiring and training Sachs, and A.A.A.'s negligence in permitting weapons to be carelessly handled and displayed on its premises. Thereafter, Jersey City filed a declaratory judgment action against its insurer, Appalachian Insurance Company. Appalachian had declined liability coverage for the incident.

· In January 1978, Sachs pleaded guilty to involuntary manslaughter. In 1980, after a hearing, the Compensation Court concluded that the accident occurred in the course of Wunschel's employment with A.A.A., inasmuch as he was behind the counter and showing A.A.A. merchandise to a prospective purchaser just prior to the incident. The court awarded survivors' benefits to his dependents. Because Wunschel was an "off-book" cash employee of A.A.A., his wages were reconstructed at $3.20 per hour, entitling his widow and daughter to lesser benefits than they would have received from Wunschel's $15,600-a-year police employment.

Plaintiff also pursued her wrongful death claims in the Superior Court. That court dismissed the suit against Jersey City because the claimant had failed to file a claim against the public entity within 90 days as required under the New Jersey Tort Claims Act, *N.J.S.A.* 59:8–8. It also dismissed the claim against A.A.A., reasoning that the Compensation Court's finding that A.A.A. employed Wunschel shielded it from tort liability, pursuant to *N.J.S.A.* 34:15–8. However, the court denied Wunschel's motion to strike Sachs' fellow-servant defense. It found that because no one had represented Sachs' interests in Compensation Court, Sachs should not be bound by its judgment. The court went on to try the wrongful death claim against Sachs, limiting trial to whether the incident arose out of Wunschel's employment with Jersey City or with A.A.A.

After hearing the proofs, the court ruled that Wunschel's employment status presented no issue of fact for the jury. It ruled that the accident arose in the course of Wunschel's employment as a Jersey City police officer, and under the co-employee doctrine dismissed Eileen Wunschel's claim against Sachs. In its view of the evidence, Wunschel was paid for working from 4:00 p.m. to 12:00 a.m. on the date in question and was therefore on duty. His representative could not then sue a fellow officer for negligence.

Thus each court reached the opposite result on the central factual issue. Both judgments were appealed to the Appellate Division.[1] The Appellate Division ordered the appeals consolidated. In an unreported opinion, the Appellate Division held that since the proofs were different before each tribunal, the inconsistent results based on separate and distinct records could be sustained. We granted certification to review that judgment. 94 *N.J.* 602 (1983).

I.

We agree that collateral estoppel should not be invoked against Sachs. Central to the application of the doctrine is that the party against whom the doctrine is to be invoked must have been party to or privy to the prior proceedings. *City of Hackensack v. Winner,* 162 *N.J.Super.* 1, 27 (App.Div. 1978), modified on other grounds, 82 *N.J.* 1 (1980). The Appellate Division correctly held that "Sachs' interests were not represented at the compensation hearing, and he was not in privity with any party." He testified as a witness produced by Wunschel, and not as a party; A.A.A. did not represent the interests of Sachs; and we were advised that the interests of his represented employer, Jersey City, were diametrically opposed to his, since it was self-insured for workers' compensation but insured for liability in tort.

However, we disagree that the Superior Court was free to resolve the difficult factual issue of co-employment without submitting the case to the jury. There is no need to consider whether the trial court had the feel for the case or a better

[1] The Superior Court had also entered judgment in favor of Appalachian in the declaratory judgment action. A.A.A. appealed and Eileen Wunschel cross-appealed the Compensation Court judgment. Eileen Wunschel, A.A.A., and Jersey City appealed the Law Division judgment that Wunschel's injury arose out of his employment by Jersey City. Jersey City appealed and Eileen Wunschel cross-appealed the Law Division's decision in favor of Appalachian Insurance Company on the declaratory judgment action.

grasp of credibility or demeanor. The test is exacting and was not met here. The judicial function on a motion for judgment at the close of all the evidence under Rule 4:40–1, like that for an involuntary dismissal under Rule 4:37–2(b), "is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." *Dolson v. Anastasia,* 55 *N.J.* 2, 5–6 (1969). "[It] must accept as true all the evidence which supports the view of the party against whom the motion is made, and should give [that party] the benefit of all legitimate inferences which may be drawn in [its] favor." *Klockner v. Green,* 54 *N.J.* 230, 235 (1969).

The question of co-employment is troubling and on these proofs is one on which "reasonable minds could differ." *Dolson, supra,* 55 *N.J.* at 5. *N.J.S.A.* 34:15–8 provides, in pertinent part:

> If an injury or death is compensable under [workers' compensation], a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.

The purpose of this section is to make workers' compensation the injured worker's exclusive remedy with respect to both the employer and the co-employee, except where there is some intentional wrong. Further, the Legislature made no attempt to classify fellow employees.

For application of *N.J.S.A.* 34:15–8, courts have required that: "(1) [petitioner] suffered a compensable injury; (2) [petitioner] and defendant were co-employees; and (3) defendant was acting in the course of his employment." *Konitch v. Hartung,* 81 *N.J.Super.* 376, 378–79 (App.Div.1963), certif. den., 41 *N.J.* 389 (1964). The parties here agree that Sachs was employed by Jersey City at the time of the accident, and it is not necessary that Sachs be performing a "duty and function of his employment," *id.* at 379.

Rather, the dispute focuses on the first factor, whether Wunschel suffered a compensable injury; that is, did it arise "out of and in the course" of his employment with the city, or with A.A.A.

[A]n accident arises out of the employment if it results from a risk "reasonably incidental" thereto and * * * arises in the course of the employment "if it occurs while the employe[e] is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." [*Hornyak v. The Great Atlantic & Pacific Tea Co.*, 63 *N.J.* 99, 101 (1973) (quoting *Bryant v. Fissell*, 84 *N.J.L.* 72, 76–77 (Sup.Ct.1913)).]

This language has been broadly interpreted to effectuate the aims and purposes of our compensation laws. *See Sabat v. Fedders Corp.*, 75 *N.J.* 444 (1978) (widow of employee, who was effectively "on call," compensated for death that occurred while coming home from place of work); *Paige v. City of Rahway, Water Dept.*, 74 *N.J.* 177 (1977) ("on call" employee compensated for assault that occurred at home).[2] Yet because of conflicting evidence it remains for a factfinder to decide whether Wunschel's activity at the time and place of the accident was so reasonably related to his employment as a police officer that the accident should be compensable by Jersey City.

Viewed most favorably to Eileen Wunschel, there was ample evidence that the accident could have arisen out of the course of Wunschel's employment with A.A.A. Officer Dudziak testified that Wunschel was behind the counter, "asked me if I wanted help", and went on to help him purchase uniform pants that were for sale. Sachs himself admitted that the accident occurred as he was removing his revolver to put on pearl grips that he wanted to buy. Further, Sachs gave grand jury testimony that suggested that Wunschel was employed by A.A.A.:

Q. Now, in your own words, tell us what happened after you got to the store, and what transpired. A. We were talking, and he [Wunschel] didn't get off Triple A till six.

---

[2]The much-discussed "going and coming" rule has been modified by *L.*1979, *c.* 283, § 12.

Q. He was working part time? A. Working part time. So, I figured I'd wait. . You know, at the time, just talking. I looked at some guns. Then, I saw a pair of pearl grips—

During the argument on the motion, the trial court candidly stated, "My goodness, there are factual issues," and indeed there were crucial disputes. During questioning as to the time Wunschel was on duty, it was brought out that Wunschel's words at the station house to Sachs were, "When the [commanding officer] decides what time he wants me, give me a call at the Triple A." Sachs' testimony in the Law Division that as soon as he entered A.A.A. he told Wunschel, "we are on the clock," would have to be weighed with his earlier testimony in the Compensation Court that he could not remember what he said.

*Jasaitis v. City of Paterson,* 31 *N.J.* 81 (1959), cited by the Appellate Division, does not dictate the result here. That case upheld an award of benefits to a policeman injured on his way home from work. Under Paterson's police department regulations, an officer was permitted to wear his uniform for one hour after work. The regulations also provided that while in uniform he was subject to departmental restrictions. The court commented that in those circumstances the police officer continued to benefit the public by his presence alone, and therefore was in the course of his duties during the trip home. "The policeman [in uniform] is so inevitably identified with and implicated in the job of public protection that he should be deemed to be still in the course of employment within the meaning of the statute." *Id.* at 86. *Jasaitis* was not an "on call" situation as we have here. It involved the action of a uniformed policeman subject to departmental regulations.

It is conceivable that a factfinder would determine that Wunschel was employed by Jersey City either because of mutual benefit to the city or because of positional risk. The "mutual benefit" doctrine allows compensation for acts apparently remote to employment because they benefit the employer and the employee. *See Mikkelsen v. N.L. Industries,* 72 *N.J.*

209, 217 (1977) (employee compensated for injury sustained off employer's premises while voting on employer's proposed collective bargaining contract); 1A A. Larsen, The Law of Workmen's Compensation § 27.33 (1983 Supp.). The Compensation Court, however, rejected evidence that police officers were conducting a stakeout in the area surrounding A.A.A.

■■ The trial court placed greater emphasis on the "positional risk" theory, holding that "but for" the fact of Wunschel's employment with the city the accident would not have occurred, citing *Briggs v. American Biltrite*, 74 *N.J.* 185 (1977) ("special errand" exception to "going and coming" rule for employee injured en route to perform overtime work). The court stressed that Wunschel had "positioned himself" at A.A.A. "for his own convenience" to be ready for his tour of duty when needed. But the essence of the positional risk theory is that neutral risks, acts of God, or chance occurrences arise out of or are within the scope of employment only if that employment places one at the location of the accident. *See Gargiulo v. Gargiulo*, 13 *N.J.* 8 (1953) (victim of stray arrow injured while walking to incinerator). The risk is incidental to the employment when it "belongs to or is connected with what the workman has to do in fulfilling his contract of service." *Id.* at 12 (quoting *Geltman v. Reliable Linen & Supply Co.*, 128 *N.J.L.* 443, 446–47 (E. & A.1942).

Plaintiffs contend that Wunschel's duties with the city did not include selling pistol grips at A.A.A. in the same sense that Gargiulo's employment included a trip that brought him into the path of a stray arrow. It could be found that it was not Wunschel's duty as a police officer that brought him to A.A.A., but rather his duty as an A.A.A. salesman that brought Sachs, a neutral risk, to the store. The question here is what employment brought Wunschel into the path of the bullet.

We believe that there is substantial evidence that Wunschel's employment with A.A.A. helped to place him in the path of the bullet. That judgment should stand. *See Close v. Kordulak*

*Bros.*, 44 *N.J.* 589, 599 (1965). If the verdict is that Wunschel's employment with the city also brought him into the path of the bullet, this could result in a finding that Wunschel's accident arose from both employments. "Joint employers" is an alternate theory of establishing employment status for the purposes of workers' compensation. *Blessing v. T. Shriver & Co.*, 94 *N.J.Super.* 426, 429–30 (App.Div.1967). Most cases, like *Blessing*, are really "lent employee" cases, but in certain instances there may be liability on the part of two employers. 1C Larson, *supra*, § 48.50, at 8–415 & n. 12, (citing *Oilfield Safety & Mach. Specialties, Inc. v. Harman Unlimited, Inc.*, 625 *F.*2d 1248 (5th Cir.1980)) (dual employment found where employee, injured while inspecting offshore oil rig for one company, had promoted second company at same location).

In sum, we find the issue of employment difficult and complex. The trial court should not have removed the issue from the jury.

## II.

Since the case must be remanded, we must consider the policies and procedures that will best serve to reduce the illogical inconsistency that this case presents. Avoiding inconsistent results and duplication of litigation is an aim of our law. *Winner, supra*, 82 *N.J.* at 32–33. Either Sachs was a fellow employee or he was not. He could not have been both at the same time for purposes of compensation.

There are other anomalies as well. Had the court not dismissed the Tort Claims Act case against Jersey City because of late notice, the city would have been collaterally bound by the compensation judgment. Had Jersey City been found liable in compensation, Sachs would have had a one-way street and could probably have relied on that judgment collaterally against Wunschel. Had Jersey City been found not liable in compensation and bound by the judgment, in that event there would have been an inconsistency within the inconsistency. Sachs would

have been found not to be a fellow servant in compensation, found to be a fellow servant at law, but his employer to be liable at law. Is it not a waste of judicial and administrative resources not to resolve in one hearing an issue in which all of the parties have notice and the opportunity to be heard and then in the second hearing have the course rerun with inconsistent results?

■ Law does not serve abstract goals. It serves the needs of parties to resolve disputes. *Cf.* Vanderbilt, *The Essentials of a Sound Judicial System*, 48 *Nw.U.L.Rev.* 1, 1 (1953). Analogous principles of law are "designed to assure that a controversy, or its most critical facets, will be resolved by the forum or body which, on a comparative scale, is in the best position by virtue of its statutory status, administrative competence and regulatory expertise to adjudicate the matter." *Hinfey v. Matawan Regional Bd. of Educ.*, 77 *N.J.* 514, 532 (1978), *quoted in Boss v. Rockland Elec. Co.*, 95 *N.J.* 33, 40 (1983). There are two forums that could resolve the issues before us.[3] *Singer Shop-Rite, Inc. v. Rangel*, 174 *N.J.Super.* 442, 444–47 (App.Div.), certif. den., 85 *N.J.* 148 (1980); *Thering v. Reinkemeyer*, 117 *N.J.Super.* 176 (Law Div.1971). The forum best suited to decide employment issues is the Compensation Court.

■ In the future, we expect the Compensation Court to honor a timely motion to intervene by an asserted fellow employee in a pending compensation case in which the employer has already been named as a respondent. Although cited for the proposition, *Witt v. Shannon Outboard Motor Sales, Inc.*, 166 *N.J.Super.* 319 (App.Div.), certif. den., 81 *N.J.* 328 (1979), does not hold that intervention by a fellow servant in a pending compensation action is prohibited. The fellow servant there contended that Rule 4:33–1 dealing with intervention in the Superior Court was applicable in the Workers' Compensation Division. The Court held:

---

[3] We have been referred to the existence of separate pension proceedings that are not before us.

Not so. That rule applies only to courts. The Workers Compensation Division [now Court] is not a [Superior] court. * * *

We need not decide in this case whether there is an inherent authority in the Workers' Compensation Division to permit intervention. *Cf. Fletcher v. Ehrlich,* 122 *N.J.Super.* 382, 300 *A.*2d 581 (App.Div.1973), and see 100 *C.J.S. Workmen's Compensation* § 433 at 296. We are satisfied that even if there was such authority its exercise lies in the sound discretion of the compensation judge. [*Witt, supra,* 166 *N.J.Super.* at 323.]

Moreover, in *Witt* the fellow servant sought to intervene not in an actual trial but only after the compensation judge dismissed the case based on the claimant's admission that he could not prove his claim. *Id.* at 322. In those circumstances there was only a single employer involved, no possible rerun of a trial, and none of the factors that would warrant either intervention or subsequent use of the judgment.

Nor does *Conway v. Mister Softee, Inc.,* 51 *N.J.* 254 (1968), preclude intervention. In that case one of two possible employers sought to initiate a direct action in compensation for contribution against a related employer, after the claimant's compensation case was decided. Justice Proctor emphasized that the issue would have been entirely different had the employer sought to join the alleged co-employer during the pendency of the proceedings. The court encouraged procedures that would justly resolve the controversy in one forum:

Although the Division does not have jurisdiction over a separate petition between employers, the Division has sole jurisdiction over workmen's compensation claims and as an incident thereto it has jurisdiction over claims between or among several alleged employers. The Division's adjudication of joint employment, however, must be made in the proceeding instituted by the employee. * * *

However, [Mr. Softee] Pennsylvania could have impleaded [Mr. Softee] Illinois as a co-respondent in the compensation action. See *Williams v. Bituminous Casualty Corporation,* 51 *N.J.* 146 (1968). Permitting such an impleader is certainly "by fair implication and intendment incident to" (*P. Bronstein & Co., Inc. v. Hoffman, supra* at p. 507) the Division's duty to make a proper finding of employment before entering an award. Indeed, in the present case the judge of compensation said that whenever it appeared to him that there was a possibility of joint employment, he would require the petitioner to bring the alleged joint employer into the action. If, as [Mr. Softee] Pennsylvania contends, this procedure adopted by the judge of compensation is too informal, the Director of the Division of Workmen's Compensation should exercise his powers under *N.J.S.A.* 34:15–64 to establish a formal procedure for impleading. [*Id.,* 51 *N.J.* at 259–60.]

Moreover, on the merits, the point was meaningless. They were " 'all one operation' " and reopening the judgment would be an "empty gesture." *Id.* at 262.

■ The plain message of these two cases is that Compensation Courts have the powers that are " 'by fair implication and intendment incident to' " the court's duties to make proper findings of employment, *id.* at 259, including the power to grant intervention or joinder. *See also Young v. Western Elec. Co., Inc.*, 96 *N.J.* 220 (1984) (compensation courts can decide pension issues incidental to awards). Discretion will remain with the Compensation Court to decide whether joinder is sought to hinder, delay, or complicate a compensation proceeding. *See Singer Shop-Rite, Inc., supra*, 174 *N.J.Super.* at 447 (judges should be "steadfast in their readiness" to resist sham).

■ Choice will remain with the claimed co-employee to refuse to intervene. But if that occurs, the compensation proceedings should not be disregarded. When a court or agency retains jurisdiction to resolve a dispute, it can take account of factfinding made in complementary proceedings. A parallel is *Alexander v. Gardner-Denver Co.*, 415 *U.S.* 36, 94 *S.Ct.* 1011, 39 *L.Ed.*2d 147 (1974), in which the Supreme Court held that a federal court should consider an employee's discrimination claim *de novo*, but that the arbitrator's decision could be admitted as evidence and accorded such weight as the court deemed appropriate. The analogy is not controlling but is instructive. In each instance a new party to the controversy— there a government agency; here a fellow employee—seeks reconsideration of a basic factual finding made in another forum.

■ Though not binding, the Compensation Court's findings should be entered into evidence in the Law Division and accorded such weight as is appropriate. In evaluating the findings, the court should consider the evidence submitted; the procedures used for admitting evidence; the employee's standing to contest the issues; whether the employer represented the em-

ployee's interests;  and whether the award itself was well-reasoned and intrinsically persuasive.  *Cf. Thornton v. Potamkin Chevrolet*, 94 *N.J.* 1, 8 (1983) (use of arbitration award in employment discrimination hearing); *McDonald v. City of West Branch, Michigan*, —— *U.S.* ——, —— n. 13, 104 *S.Ct.* 1799, 1804 n. 13, 80 *L.Ed.*2d 302, 310 n. 13 (1984) (arbitral decision may be admitted as evidence in § 1983 action).

### III.

A remaining issue is plaintiffs' contention that their filing of a workers' compensation petition constituted substantial compliance with the notice provisions of the New Jersey Tort Claims Act.

*N.J.S.A.* 59:8–3 states that "[n]o action shall be brought against a public entity under [the Tort Claims Act] unless the *claim upon which it is based* shall have been presented in accordance with the procedure set forth in this chapter."  (Emphasis added).

As to the "procedure," *N.J.S.A.* 59:8–8 requires that:

A claim relating to a cause of action for death or for injury to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action.  * * *  The claimant shall be forever barred from recovering against a public entity if:

a) He failed to file his claim with the public entity within 90 days of accrual of his claim except as otherwise provided in section 59:8–9 * * *.

*N.J.S.A.* 59:8–9 provides for the filing of a notice of late claim for one who has failed to file a claim within the ninety days provided in *N.J.S.A.* 59:8–8.  Such notice of late claim, however, must be filed within one year of the accrual of the cause of action.

Plaintiffs never filed a notice of claim pursuant to *N.J.S.A.* 59:8–4, nor did they make a motion to file a late notice of claim within a year pursuant to *N.J.S.A.* 59:8–9.

Plaintiffs assert that they substantially complied with the Act because of the filing of the compensation petition.  We are satisfied that this issue was correctly resolved against plaintiffs.  There is nothing about the workers' compensation

petition that would give notice of any intention to assert a claim for wrongful death against the public entity. *Compare Lameiro v. West New York Bd. of Educ.*, 136 *N.J.Super.* 585 (Law Div.1975) (no substantial compliance as against public school where attorney wrote letter to school principal asking for name and address of student who injured client) *with Dambro v. Union Cty. Pk. Comm'n*, 130 *N.J.Super.* 450 (Law Div.1974) (substantial compliance against municipality where attorney relied on tax assessor's incorrect denial of municipality's ownership).

To maintain infant Rae-Ann's claim, plaintiffs rely on *Barbaria v. Township of Sayreville*, 191 *N.J.Super.* 395 (App.Div. 1983), holding that the wrongful death claims of infants were not time-barred under the Tort Claims Act as were the claims of adult dependents. This issue was never raised below and we decline to resolve the issue at this time. Moreover, the petition for certification to review *Barbaria* was dismissed as moot in light of a settlement between the parties and without the Court having considered the merits of the matter. 95 *N.J.* —— (1984).

## IV.

In some cases, despite the best of efforts, inconsistent verdicts may occur. No system will meet every challenge. Still we should seek procedures that will minimize injustice and inconsistency.

Accordingly, we hold that in future cases a co-employee having a genuine interest in the outcome of compensation proceedings pending against a joint employer should be permitted to intervene in those proceedings. In the absence of intervention, these findings should be given evidentiary weight in any subsequent proceedings, with the burden on the one asserting the fellow-servant defense to challenge the compensation award.

This case cannot be rerun. We must deal with its present posture. We must remand the case to the Law Division. To avoid injustice, we remand the compensation judgment to that

court to abide by the verdict in the Law Division. If the jury decides that there was co-employment, the Compensation Court should amend the judgment to reflect a modified award. *See Estelle v. Board of Educ. of Red Bank,* 14 *N.J.* 256 (1954) (Compensation Court should re-open case after adjudication at law that accident was work-related).

In the Law Division the jury may receive evidence of the compensation judgment as to A.A.A. only. It shall be instructed that it must accept that the accident arose at least in part as a result of Wunschel's employment with A.A.A. It must resolve whether or not the accident arose as well in the course of Wunschel's employment by the City of Jersey City, there being no question that Sachs was on duty at the time. The jury should be instructed that, based on its findings, there will be further proceedings in either the Superior Court or Compensation Court to resolve the claim for damages in accordance with the law of the forum.

The judgment of the Appellate Division is reversed and the cases remanded for further proceedings in accordance with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*For affirmance*—None.