ANTONIO DELALLO *vs.* QUEEN DYEING COMPANY.

DECEMBER 19, 1947.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an appeal from a decree of the superior court denying petitioner compensation under the workmen's compensation act, general laws 1938, chapter 300.

On March 18, 1943, the petitioner, then about sixty-two years of age, while rolling a heavy barrel, was thrown against a pipe that protruded from the side of respondent's building. In this industrial accident he sustained a laceration of the face, about an inch long, over the right malar bone. Doctor George J. Dwyer, respondent's physician, treated him on that day and four times thereafter for this injury.

The petitioner testified that on April 1, 1943, while seated in the doctor's waiting room, he felt faint and dizzy; that he went out on a porch adjoining the doctor's office; and that he there fell and struck the back of his head on the floor. The following questions and answers in redirect

examination as to the cause of this fall appear at the very end of his testimony: "Q. Before you saw the doctor, what did you do? Did you go out on the piazza? A. Yes, I went to the piazza, see. I slipped and I fell. Q. Was there anything you slipped over? A. I think there was something there." Objectively, he suffered a scalp wound in this accident. Doctor Dwyer, who gave him first aid for such injury, testified that the petitioner struck his head on an iron mat on the porch as "the imprint of the mat was imbedded right into his scalp." The petitioner testified that after a few treatments for the scalp wound Dr. Dwyer told him that he. was able to resume his ordinary work, and that if he did not want to return to work he should go to his own doctor.

On April 24, 1943, the petitioner consulted Dr. Louis J. Cella, complaining of severe headaches, dizziness and pain over the right cheek bone. These symptoms, according to the petitioner, appeared immediately after the first accident and have continued ever since, although not so intensive. Doctor Cella, who has continued as his doctor since that date, gave him diathermy and electric treatments, massage of the face, and nasal drops. This doctor testified that the petitioner was totally incapacitated up to the time of the hearing in the superior court on May 9, 1945, and that at that time he was able to do only light work.

All the medical testimony, whether for the petitioner or respondent, is based almost entirely upon petitioner's subjective symptoms. Other than a small scar over the right cheek bone and possibly that of the scalp wound, there is no objective evidence of injury from either accident. The report of an X-ray examination of petitioner's "right antrum region" by Dr. A. M. Feifer, dated June 7, 1943, which was admitted in evidence by agreement, reads as follows: "Anterior & lateral views are negative for fracture—The anterior view shows some atrophy or decalcification of the malar bone in its upper border."

The medical evidence is in serious conflict as to the cause

of petitioner's condition. A statement of the conclusions of the various doctors is sufficient for our purposes, especially since such conclusions are all based upon the existence of the subjective symptoms described by the petitioner. Doctor Cella attributed petitioner's condition to the first injury. Doctor Frank J. McCabe, an eye, ear, nose and throat specialist, who examined petitioner at Dr. Cella's request, ascribed the condition to either the blow on the cheek or the blow on the head. In other words, he stated that either blow could have been a contributing cause by way of "post-traumatic neurosis." Doctor Dwyer was of the opinion that the petitioner had high blood pressure and that the injury from either accident did not produce or aggravate that condition. Doctor John E. Donley, a specialist in nervous diseases, concluded that the second accident was the sole cause of petitioner's condition.

The trial justice made four findings of fact: (1) that on March 18, 1943, the petitioner suffered an injury to his right cheek, which arose out of and in the course of his employment, but which did not disable him beyond the waiting period of three days; (2) that on April 1, 1943, while at his physician's office, he felt faint and went to the porch where he slipped and fell, striking his head on an iron mat with considerable force; (3) that whatever disability he suffered since April 1, 1943 was due to the accident of that date; and (4) that the fall of April 1, 1943 had no causal relation to the injury of March 18, 1943.

The petitioner concedes that, as the evidence was conflicting, findings numbered 1, 2 and 3 are supported by legal evidence and therefore are not reviewable by this court. He urges, however, that the fourth finding is erroneous as a matter of law. Granting that there was no causal relation between the first injury and the second accident, he strongly contends that "Under the workmen's compensation law, aggravations of compensable injuries are traceable to the original accident where the chain of causation is not broken and an injury received at the

doctor's office while undergoing, or waiting for treatment for the original injury, has, as a matter of law, a direct causal connection with the first injury." In the argument before us petitioner's counsel amplified the above proposition, as set forth in his brief, by arguing that there was a causal connection as a matter of law between a compensable injury and an injury suffered in a second accident unrelated to his employment, whenever an injured employee was on his way to or from a doctor's office for treatment of the compensable injury, provided that the second accident and injury were not due to the act or conduct of a responsible third party.

Petitioner thus raises this question for the first time before us. A careful reading of the transcript shows that in the superior court the case was tried on the theory that his physical condition due to the first accident was the cause of his second accident. Since there was conflicting evidence on this point, the finding of fact of the trial justice was binding not only on the petitioner but on this court. See *Ruggiero* v. *Brown & Sharpe Mfg. Co.*, 71 R. I. 178, 183. However, in view of the fact that petitioner's claim for compensation relates to an injury suffered in the spring of 1943, and further as he raises a legal question that may recur in other cases, we shall consider that question.

Before considering petitioner's contention, we note that admittedly his condition was not traceable to any medical treatment that was administered to him, nor to any act of the doctor in the course of actual treatment for his original injury. Excepting the case of *Flanagan* v. *Green & Son*, 122 N.J.L. 424, upon which he strongly relies, we exclude as inapplicable all cases cited by him in which a compensable injury was induced or aggravated by medical treatment. We also exclude for the same reason all cases dealing with an employee's right to compensation while injured in going to or from his work, or any cases which give compensation for a disease or aggravation thereof where there is legal evi-

dence of causal relation between such condition and the employment.

The petitioner cites no case directly or even closely in point to support his contention and we have found none. The decision in *Flanagan* v. *Green & Son, supra,* gives him no assistance. In that case an employee, who was confined in a hospital under treatment for a leg fracture from an industrial accident, suffered an injury to his arm while cooperating with nurses in the removal of bed clothing. The employer appealed from an award of compensation for the second injury on the ground that the negligence of the nurses was an intervening and superseding cause that broke the causal connection between the two accidents. In sustaining the award the court, at page 426 of that opinion, said: "While the question is fairly debatable, we incline to the view that whether the *negligent treatment* of the injury results in its aggravation or a wholly independent injury, the disability consequent on the second accident is classable as resulting from the first injury, in that it came about *through treatment* of the compensable injury and was directly *connected* therewith. In this respect we can see no distinction between the instant case and one in which, *through negligent treatment,* the disability was increased." (italics ours)

The *Flanagan* case is clearly distinguishable from the case at bar. It is to be noted that in that case the New Jersey court rested its decision on negligent treatment of an employee's compensable injury while he was in a hospital under actual treatment for that injury. No such condition exists in the case under consideration.

The only other pertinent case cited to us by the petitioner is that of *Hoogen* v. *Ritz Carlton Hotel,* 14 N. J. Mis. R. 555, a decision by a referee of the New Jersey department of labor from which no appeal was taken. In that case causal connection between the original disability and the second injury was found. In the instant case there is no basis for a like conclusion, as the petitioner, having admitted

that he was bound by the third finding of the trial justice, impliedly conceded that the second accident was an entirely independent occurrence.

 Our workmen's compensation act, like all other such acts, is fundamentally a humanitarian statute designed to protect an employee against the burdens resulting from accidental injury "arising out of and in the course of his employment." G. L. 1938, chap 300, art. I, §1. It does not provide health insurance, as such term is ordinarily understood, for the employee. The injury from accident that the act covers must arise out of and in the course of employment; otherwise the injured employee is outside its protection. In other words, it must appear from legal evidence, whether direct or by reasonable inference, that such accidental injury was the cause of the employee's disability. In compensation cases if there is legal evidence showing a reasonable causal connection between the accidental injury and the employee's disability, then it can fairly be said that the injury was the cause of the disability in contemplation of the act.

 On this issue we must ascertain the legislative intent from the language used in its relation to the subject matter, having in mind that we are called upon to construe the act liberally to effectuate its purpose. *Fuller Co.* v. *Ryan*, 69 R. I. 347, 350. See *St. Goddard* v. *Potter & Johnson Machine Co.*, 69 R. I. 90. In determining whether there is a causal relation between employee's work and an accidental injury to him, consideration is given not only to the nature of the employment itself but also to the conditions, incidents and obligations fairly connected therewith. If such relation is not established by legal evidence, there is no compensable injury arising out of and in the course of the employment. See *Nowicki* v. *Byrne*, 73 R. I. 89.

 The petitioner here has the burden of proving by a preponderance of evidence a causal connection between the industrial accident and the injury for which he claims compensation. *Mahoney* v. *Merchants & Miners Transpor-*

*tation Co.,* 70 R. I. 195; *La Point* v. *Pendleton,* 61 R. I. 121. In this case he seeks to do so though the contention that but for the injury arising out of and in the course of his employment he would not have been in a doctor's office *waiting* for treatment, and but for that fact he would not have been injured in a second admittedly independent accident in no way related to his physical condition due to the industrial accident. He therefore argues that in such a situation there is a causal connection between the first and second accidents as a matter of law. To hold that in legal contemplation petitioner's employment continued in the circumstances of record before us would be to disregard the purpose of the act and, in effect, substantially render the employer an insurer of the employee's health. We therefore find petitioner's contention to be without merit.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Goldberg & Goldberg, Philip B. Goldberg, George Ajootian,* for petitioner.

*Henry M. Boss, Francis W. Conlan,* for respondent.