WILLIAM G. PAIGE, PETITIONER-APPELLANT, v. CITY OF RAHWAY, WATER DEPARTMENT, RESPONDENT-RESPONDENT.

Argued April 4, 1977—Decided July 25, 1977.

*Mr. Paul Franz* argued the cause for appellant (*Mr. George Mandle, Jr.* on the brief).

*Mr. Robert N. Golden* argued the cause for respondent (*Messrs. Graham, Yurasko, Golden & Lintner,* attorneys).

The opinion of the court was delivered by

PASHMAN, J. This is a companion case to *Watson v. Nassau Inn,* 74 *N. J.* 155 (1977) and *Briggs v. American*

*Biltrile,* 74 *N. J.* 185 (1977). The sole issue is compensability, defendant having conceded petitioner's total disability. The judge of compensation granted petitioner's claim but the Appellate Division reversed, holding that "the matter falls clearly within the going and coming rule." The appeal is before us as of right because of Judge Kole's dissent. *R.* 2:2-1(a)(2).

The pertinent facts are not in dispute. The petitioner, William Paige, was one of two chief water plant operators in the Water Department of the City of Rahway. The water treatment plant operated around the clock and was manned continuously by a shift operator. Petitioner and his fellow chief operator alternated weekly in working on the 8 A.M. to 4 P.M. shift and the 4 P.M. to midnight shift. Their duties included supervision of department personnel, organization of work schedules, maintenance of plant machinery and keeping records of operations. The chief operator worked under the assistant superintendent of the department during the daytime shift, but he was in complete charge during the night shift.

Because there was no third supervisor for the midnight to 8 A.M. shift, one of them also had to remain on call during that shift and to take responsibility for any emergencies which might arise. Petitioner's supervisor testified that as a chief operator, he was theoretically on call 24 hours a day, 7 days a week, as are policemen and firemen. This duty was formally incorporated into the civil service description of the job, and petitioner received no extra compensation for the additional weekday shift unless he was required to make a call.[1] However, the supervisor added that petitioner's "on call" status was, in practical terms, limited to this

---

[1]During the weekends when he was on call, petitioner received overtime pay simply for being available. On those occasions when he was required to go to the plant, he was paid for a least two hours work, at the appropriate overtime rate, with additional compensation for any other hours actually worked.

midnight to 8 A.M. shift on specified weeks and to alternate weekends. The department left it to the two men to determine when they would be on duty. They agreed between themselves that the man assigned to the evening 4 P.M. to midnight shift would also take responsibility for the following midnight to 8 A.M. shift.

Since the consequences of a breakdown in the water treatment system would have been serious, performance of this on call duty was critical to the operations of the plant. The superintendent of the department testified that petitioner was expected to inform the plant if he left home for more than a few minutes, and petitioner himself stated that he always left a telephone number and address where he could be reached. He also said that he did not travel any substantial distance out of town when he was on call.

There was also evidence that petitioner had separate responsibilities in addition to this bi-weekly on call duty. On various occasions when the water pressure fluctuated (usually in the summer months), he was required to make adjustments of certain interconnections located throughout the city. These adjustments were made with a valve key, a large, bulky tool with a lever arrangement. The department had a truck equipped with the necessary tools, but he kept his own valve key in the trunk of his car so that he could drive directly to the interconnections and avoid making a trip to the plant. He did this with the approval of his superiors, one of whom also carried a valve key in his car to save time in making the same adjustments.

The injuries which led to this claim for workers' compensation benefits were caused by an unknown assailant who attacked petitioner just after he arrived home from work on the evening of January 18, 1972. Petitioner had been on duty during the 4 P.M. to midnight shift that night and he had just dropped off the shift operator at his home. He then returned to his own home where he was scheduled to remain on call for the next eight hours. The particular details of the assault could not

be fully established before the compensation judge because petitioner's memory was impaired by the beating. Nevertheless, defendant conceded that the attack must have occurred immediately after petitioner locked his car in the driveway. He was robbed and beaten severely, suffering a depressed skull fracture, brain impairment and a significant hearing loss. He subsequently fell and fractured his right shoulder during a seizure which occurred while he had a temporary plate in his skull. Defendant has not challenged the finding that these injuries constituted total disability.

We agree with the legal conclusion of the judge of compensation that petitioner's injuries occurred in the course of his employment and therefore entitle him to workers' compensation benefits under *N. J. S. A.* 34:15-7. Although the judge stressed in his decision the particular factual setting surrounding this tragic assault,[2] we think that the nature of petitioner's on call status is a sufficient basis for providing recovery. The rationale for the going and coming rule is the suspension of the employment relationship after the employee's departure from work at the end of the day, *see Gullo v. American Lead Pencil Co.,* 119 *N. J. L.* 484, 486 (E. & A. 1937) ; *Gilroy v. Standard Oil Co.,* 107 *N. J. L.* 170, 172 (E. & A. 1930). Since petitioner's on call status obligated him to his employer even after he left his place of work, the rule obviously has no application here as a bar to compensation. Petitioner was under direct instructions to inform the plant of his whereabouts during the midnight to 8 A.M. shift and to remain available for emergency calls. He was personally accountable for the operation of the plant and could be interrupted at any time. He

---

[2]He mentioned, in particular, the late hour at which petitioner was assaulted, the use of his personal car for emergency tasks and the presence of work tools in his car at the time of the assault. *Cf. Rubeo v. Arthur McMullen Co.,* 117 *N. J. L.* 574 (E. & A. 1937) ; *Pisapia v. Newark,* 47 *N. J. Super.* 353 (Cty. Ct. 1957).

took these responsibilities seriously as an integral part of his job and remained, as the compensation judge found, "on a rather tight leash" during these stand-by periods. It is clear that petitioner's trip home at that hour and his location at the time of the assault were both within the contemplation of his employer. *See Bryant Adm'x v. Fissell,* 84 *N. J. L.* 72, 77 (Sup. Ct. 1913).

In addition, the city received a substantial benefit from this working arrangement, since it could dispense with the need for a third chief operator to supervise the midnight to 8 A.M. shift. Moreover, as the compensation judge noted, the city was relieved of the cost of providing suitable sleeping quarters at the plant for the chief operator during this shift. It would be contrary to the underlying purposes of workers' compensation to force the employee to absorb the risks of this extra duty simply because he returned home. *See Watson v. Nassau Inn, supra,* 74 *N. J.* at 159; *Briggs v. American Biltrite, supra,* 74 *N. J.* at 188–189.

These facts distinguish petitioner's position from other jobs whose formal descriptions also contain a requirement that the employee be on call for emergencies at all times. In *Jasaitis v. Paterson,* 31 *N. J.* 81 (1959), we upheld an award of benefits to a policeman injured on his way home from work. Significantly, we emphasized his specific duties while in uniform and the public benefits of his visible presence as a deterrent to crime, rather than his on call status around the clock. *Id.* at 85–86. *Cf. Robinson v. Levy,* 20 *N. J. Misc.* 444 (W. C. B. 1942); *Juna v. New York State Police,* 40 *A. D.* 2d 742, 336 *N. Y. S.* 2d 738 (1972); *Donnell v. Waccabuc Country Club,* 29 *A. D.* 2d 1022, 289 *N. Y. S.* 2d 534 (1968). By contrast, in *Morris v. Hermann Forwarding Co.,* 18 *N. J.* 195 (1955), we denied compensation where the claimant's home activities were limited to occasional telephone calls to his employer. *Id.* at 200. It makes no difference here that petitioner's injuries did not stem directly from an emergency trip to the plant. As in *Jasaitis,* his off duty time was not his own because he re-

mained subject to well defined limitations dictated by his employer. In fact, this case is stronger than *Jasaitis* because petitioner's readiness for immediate service was critical to the safe and efficient operation of the plant.

Defendant's argument that the assault did not "arise out of" petitioner's employment is without merit. We have found that petitioner's employment extended to his trip home so that he was still in the course of employment when attacked; thus it would not have occurred "but for" his employment. *See White v. Atlantic City Press*, 64 *N. J.* 128, 139 (1973) ; *Howard v. Harwood's Restaurant Co.*, 25 *N. J.* 72, 82 (1957). Absent any proof that the assault was motivated purely by personal animus unrelated to petitioner's employment, *see Pittel v. Rubin Bros. Bergen Co.*, 59 *N. J. Super.* 531 (App. Div. 1960) the requisite causal connection is established under the "positional risk"[3] test which we have adopted. *See, e. g., White v. Atlantic City Press, supra.*

The judgment of the Appellate Division is reversed, and the decision of the judge of compensation is hereby reinstated.

SCHREIBER, J., dissenting. The majority holds that an employee who was injured after arriving home from his regular work schedule is entitled to worker's compensation simply because he was on call. Rather than acknowledging that the going and coming rule no longer has any vitality in view of its decisions today, *Wyatt v. Metropolitan Maintenance Co.*, 74 *N. J.* 167 (1977), *Watson v. Nassau Inn*, 74 *N. J.* 155 (1977), and *Briggs v. American Biltrite*, 74 *N. J.* 185 (1977), and its previous decision in *Hornyak v. The Great Atlantic & Pacific Tea Co.*, 63 *N. J.* 99 (1973), the Court has extended compensability to the situation where the employee suffers an injury after completion of his regular

---

[3]*See Briggs v. American Biltrite*, 74 *N. J.* 185, 189 (1977).

work and arrival at home at a time when he is subject to call, but not being compensated.

No authority is cited for the proposition enunciated except *Jasaitis v. Paterson*, 31 *N. J.* 81 (1959). In *Jasaitis*, a uniformed police officer was held to be entitled to compensation for accidental injury suffered while en route home. Under police department regulations an officer was permitted to wear his uniform for one hour after his fixed tour of duty. The regulations also provided that while in uniform he was subject to specific departmental restrictions. The Court commented that in those circumstances the police officer was implicated in the job of public protection and was in the course of his duties during the trip home. The work relationship in *Jasaitis* cannot be equated with the instant case. *Jasaitis* is not an on call status situation. It involves the action of a policeman in uniform in accordance with department regulations. The *Jasaitis* court makes it abundantly clear that, if the officer had *not* been in uniform, the accident would not have been compensable.

The issue to be addressed is whether the City of Rahway and its water consumers should properly be assessed with the costs incurred by virtue of an assault upon a water department employee after he had arrived home at the end of his regular shift because he was on call. Is the status of being on call so intimately related with the work that injuries suffered during that period should be compensable? Such accidents do not occur on the employer's premises. The employee is free to do what he pleases except that his movements may be limited in the sense that he must be reachable. Other than that limitation, he is not in any wise under the control or supervision of the employer. The majority's argument that having Paige on call for emergencies was substantially beneficial to the employer so as to distinguish this case from others in which the employee may be on call for emergencies, 74 *N. J.* at 180–182, is at best a difference in degree and not a distinction.

Our research and that of counsel have produced no case holding compensability when the employee's work relationship was exclusively his on call status. Compensability has been awarded by some courts when the employee was en route to the job or returning after having been called out. The majority has cited such cases. *Robinson v. Levy*, 20 *N. J. Misc.* 444 (Workmen's Comp. Bur. 1942) (permanent nurse for child who was employed and paid on the basis of 24 hours per day injured when returning from her home where she had laundered some uniforms); *Juna v. New York State Police*, 40 *App. Div.* 2d 742, 336 *N. Y. S.* 2d 738 (1972) (state police officer killed in automobile accident on returning to duty while within geographic area of his troop and who under police regulations was required to take prompt and proper action in all police matters); *Donnell v. Waccabuc Country Club*, 29 *App. Div.* 2d 1022, 289 *N. Y. S.* 2d 534 (1968) (beach guard who was subject to call and being paid injured while returning home). There are numerous cases, on the other hand, which have held that the going and coming rule applies to an on call employee: *Foster v. Massey*, 132 *U. S. App. D. C.* 213, 407 *F.* 2d 343 (D. C. Cir. 1968); *Russellville Gas Co. v. Duggar*, 47 *Ala. App.* 661, 260 *So.* 2d 393 (Civ. App. 1971); *Thornton v. Texarkana Cotton Oil Corp.*, 219 *Ark.* 650, 243 *S. W.* 2d 940 (1951); 1 Larson, *The Law of Workmen's Compensation* § 24.23 (1972).

The on call status should not *per se* create compensability. The employee is not on duty at that time. He is not performing any services for the employer. He is engaged in whatever personal endeavors he desires and is not being directed by or under the control of the employer. If, as the majority states, the going and coming rule remains viable to exclude routine daily trips to or from the employee's fixed place of business at the end of the day, *Briggs v. American Biltrite*, 74 *N. J.* at 189–190, then the employee Paige's trip home after his regularly scheduled work at the Rahway Water Department plant cannot encompass any com-

pensable injury during that trip. His on call status during that trip was irrelevant. Presumably he could not be called until he arrived at home. Furthermore, even upon reaching home, the fact that the employer had a right to call him, which it had not exercised, is not sufficient in and of itself to warrant imposing costs of his injury on the City of Rahway Water Department and its consumers.

I would affirm.

Justice CLIFFORD joins in this opinion.

*For reversal*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN and HANDLER—5.

*For affirmance*—Justice CLIFFORD and SCHREIBER—2.