ROBERTA SABAT, PETITIONER-APPELLANT, v.
FEDDERS CORPORATION, RESPONDENT-RESPONDENT.

Argued November 14, 1977—Decided February 2, 1978.

Mr. *Lawrence P. Brady, Jr.* argued the cause for appellant (*Messrs. Doyle and Brady,* attorneys).

Mr. *George J. Kenny* argued the cause for respondent (*Messrs. McElroy, Connell, Foley and Geiser,* attorneys).

The opinion of the court was delivered by

PASHMAN, J. In the early evening of September 20, 1973, while en route home from his place of employment at the Fedders Corporation plant and office facility in Edison Township, Peter J. Sabat was killed in an automobile accident on Route 206 in Bedminster Township. His wife, Roberta Sabat, instituted this proceeding on July 6, 1974 by filing a dependency claim petition with the Division of Worker's Compensation on behalf of herself and her three minor children. In an oral opinion, the judge of compensation denied her petition, holding that the "going and coming" rule precluded the award of compensation benefits for her husband's fatal accident. The Appellate Division affirmed the Division's determination in an unreported *per curiam* decision. We granted certification. 73 *N. J.* 63 (1977).

Both determinations below were rendered prior to our recent decisions in a quartet of cases outlining the current contours of the going and coming rule. *Watson v. Nassau Inn,* 74 *N. J.* 155 (1977); *Wyatt v. Metropolitan Maintenance Co.,* 74 *N. J.* 167 (1977); *Paige v. City of Rahway,* 74 *N. J.* 177 (1977); *Briggs v. American Biltrite,* 74 *N. J.* 185 (1977). This appeal was held for consideration in light of those decisions. We have concluded that the disposition of this case is controlled by the rationale of *Paige v.*

*City of Rahway, supra.* Accordingly, we reverse the judgment of the Appellate Division and hold that petitioner is entitled to compensation benefits.

On the date of his death, petitioner's husband was employed by Fedders in a managerial capacity with the company's data processing division, a position to which he had been promoted from the job of computer programmer in 1972. He was charged with the task of designing computer programs and was also responsible for the supervision of some twenty employees engaged in similar endeavors. Sabat was classified as an "exempt" employee by Fedders, which meant that he received an annual salary with no deductions for sickleave or additional compensation for overtime work. Although he was expected to be at work for the regular business day (8:30 A.M. to 4:30 P.M.) during his normal Monday to Friday workweek, he had no fixed hours of work and was required to put in whatever additional time the job required.

No public transportation was available between the Sabat home in Flanders, New Jersey and the Fedders' offices. Most Fedders' employees drove to work in their personal automobiles and parked in lots provided by the employer. Sabat drove his own car on his daily trip to work which consumed approximately an hour each way. The company provided no reimbursement for his commuting expenses.

Petitioner testified that her husband's work schedule was irregular because he was often called at home by computer operators working on the second and third shifts at Fedders. She indicated that problems were constantly arising, necessitating either decedent's staying late at the office, giving directions to subordinates over the phone or returning to work during the night to resolve the particular difficulty himself. By her estimate, her husband had been required to return to the office in the evenings at least 50 times during the period of his employment at Fedders. On some occasions he was called back to work as soon as he arrived home; other times he was required to work through the night. In a typical week he would receive several phone

calls at home seeking his assistance. To facilitate his handling of such unexpected problems, he kept copies of the computer programs at home so as to be able to give instructions to the computer operators back at the office. In addition, he frequently brought excess work home with him to be done in the evening.

On the date of the accident, petitioner spoke to her husband in the early afternoon. He indicated that barring any unforeseen problems, he would be home on time for what he anticipated would be an evening of relaxation. Judging from the time, 6:00 P.M., and place of the accident, Sabat left work between 5:00 and 5:30 P.M. He died on a highway that was part of his normal commuting route. One of the effects recovered from decedent's car was his attache case containing papers which resembled a Fedders computer printout.

The findings of fact by the judge of compensation were in general accord with petitioner's account of her husband's employment responsibilities and his activities on the date of the accident. He found that Sabat had been "subject to call at all times" although he was not compensated for this extra duty. He also found that decedent's fatal trip home was solely for personal purposes notwithstanding the fact that he was carrying business-related papers in his attache case. While conceding that Sabat often did work at and from his home and was frequently called back to his office, the compensation judge relied upon *Morris v. Hermann Forwarding Co.,* 18 *N. J.* 195 (1955) for the requirement that the trip home of an employee who performs work at home must be *"for the purpose* of doing work for the employer * * *"* in order to establish compensability under an exception to the going and coming rule. 18 *N. J.* at 200 (emphasis in original). The fact that the employee is carrying any "paraphernalia of his employment" with him is insufficient in itself to supply the requisite employment-related purpose. *Id.* In so ruling, the compensation judge focused on the particular purpose of decedent's tragic journey home rather

than considering the possible work-related functions he might perform while at home. Since Sabat's trip home was merely a routine commute at a regular hour to a contemplated evening of free time, the trip was viewed as purely personal activity for purposes of the going and coming rule. The Appellate Division, assuming the continued viability of the going and coming rule, agreed that Sabat's accident did not fall within any of the recognized exceptions to that doctrine.

Subject to exceptions, the going and coming rule is the law of this state. *See Watson v. Nassau Inn,* 74 *N. J.* at 159. In our most recent formulation, we have stated that the general rule

> * * * extend[s] only to those routine daily trips to or from an employee's fixed place of business at specified hours at the beginning or end of the day. Absent special circumstances which suggest a connection with employment, such daily trips are not compensable under the act. [*N. J. S. A.* 34:15–7].
>
> [*Briggs v. American Biltrite,* 74 *N. J.* at 190]

In *Paige v. City of Rahway, supra,* we held that the going and coming rule does not bar compensation for an injured employee whose duties are such that he is realistically "on call" while away from work. The reasoning behind that decision is fully applicable under the circumstances of the instant case and compels our holding that petitioner's husband's accidental death is compensable under the act.

In *Paige,* an employee who had just completed his "on-duty" shift and arrived home was attacked in his driveway by an unknown assailant and severely injured. The employee was scheduled to be "on call" for emergency duty for another eight hour shift at his home. We held that he remained in the course of his employment during and after his trip home. The fact that the employee was not reacting to a specific emergency call from his employer at the time his injuries were sustained did not preclude a finding of com-

pensability. The peculiar nature of the employee's duties resulting from his on-call status substantially "obligated him to his employer" even while at home. That fact, rather than the mere existence of his on-call status, rendered the going and coming rule inapplicable. 74 *N. J.* at 180–181. We noted that the claimant was on a "rather tight leash" during his on-call shifts and that "his off duty time was not his own because he remained subject to well defined limitations dictated by his employer." *Id.* at 181–182. The relatively rigid constraints on the claimant's freedom were contrasted with the "theoretical" on-call status of other employees required to be available at all times for emergencies. *Morris v. Herrmann Forwarding Co., supra,* was distinguished because of the minimal work activities performed at home by the employee in that case.

Sabat's employment with Fedders was characterized by intrusions into his nominally free time similar to those in *Paige.* Although decedent, unlike Paige, had no formally assigned on-call period during which he was required to be available for immediate service, he was called upon to perform a *de facto* supervisory role over the company's computer operations on a continuing basis. In practice, this function required that he be available "after hours" during the week to answer inquiries and suggest solutions for whatever problems came up and, if necessary, to personally resolve a particular difficulty.[1] That this responsibility im-

---

[1]Sabat also was employed part-time on weekends only as a computer operator for another company, for which he was paid on an hourly basis. The record does not reveal whether Fedders' data processing division operated on weekends or whether Sabat's around-the-clock on-call status for Fedders continued on weekends. However, it is apparent that Sabat's secondary employment neither entailed the performance of any managerial duties nor required his services during his normal workweek at Fedders. Hence, it cannot be said that his holding a second job detracts from the importance of his functions on Fedders' behalf. In any event, since decedent's fatal accident occurred during his normal workweek, we need not consider the significance, if any, of these factors.

posed a genuine burden is demonstrated by the relatively high incidence of calls for assistance and return trips to the office. The frequency with which Sabat's counsel and assistance were sought also suggests that he played a significant, if not critical, role in the smooth functioning of the employer's data processing department. While decedent's duty to respond to emergency calls was less formalized than Paige's, his actual performance of problem-solving functions in exigent circumstances supplies the requisite element of work-relatedness to his on-call status. The benefit to his employer from this arrangement cannot be disputed — Sabat's ready accessibility to his subordinates for problem-solving purposes both enhanced the operational efficiency of the enterprise and presumably enabled Fedders to avoid the hiring of a person (or persons) of equivalent authority and expertise to supervise its computer operations beyond the conclusion of the regular workday.

The combination of these factors impels our conclusion that the relationship between Sabat's on-call responsibilities and his employment was sufficiently close to support a finding that he remained "in the course of" his employment at the time of his death. Despite the fact that decedent was "coming" home to what he hoped would be an evening unburdened by work, that evening, like any other of his weekday evenings, was subject to unanticipated disruption at any time by the demands of his job. Indeed, the lack of any specific temporal limitations on Sabat's on-call status, which resulted in his being effectively on continuous call during his normal workweek, would suggest that he was within the course of employment at virtually all times when he was at home in the evenings or otherwise available for communication.[2] As in Paige, decedent's employment obligations car-

---

[2]The record does not indicate whether Sabat kept his subordinates apprised of his whereabouts so that he could be reached when not at home. Compare Paige v. City of Rahway, 74 N. J. at 179. We intimate no view as to the applicability of the doctrines of abandon-

ried over into his off-duty hours to such an extent that his on-call status was substantially more than "theoretical." In the absence of any realistic suspension of the employment relationship upon the employee's departure from the employer's premises, the going and coming rule does not preclude compensability. *Paige v. City of Rahway,* 74 *N. J.* at 180.

 Contrary to the extrapolations of the dissent, the mere fact that an employee is "on call" to an employer will not, without more, establish entitlement to compensation as a result of an accident. Our approach to these cases requires an individualized determination on a case-by-case basis to ascertain the extent and nature of the actual intrusion of employment responsibilities into the employee's so-called off-duty hours and the concomitant constraints on his otherwise personal time. We reiterate our emphasis on the functional rather than the theoretical or formal attributes of the employer's responsibilities. The showing of frequent and substantial disruption of the off-duty life of an employee whose continued availability is essential to the operational efficiency of his employer's business constitutes "special circumstances" sufficient to render the going and coming rule inapplicable.[3]

The judgment of the Appellate Division is reversed and the matter is hereby remanded to the Division of Worker's

ment of or deviation from employment to similarly situated employees as no hint of any such activities is presented in this case. *Cf. Wyatt v. Metropolitan Maintenance Co.,* 74 *N. J.* 167, 172 n. 3 (1977).

[3] We note that Sabat's employment situation differs dramatically from that of employees who take work home out of a sense of self-imposed moral obligation or self-perceived necessity arising out of an inability to cope with their workload during their normal workday. The benefits of such activity are predominantly personal with only an incidental enhancement of the efficient functioning of the employer enterprise. In such cases the work connection is, without more, too attenuated to justify the imposition of the costs of off-duty injuries on the employer.

Compensation for further proceedings not inconsistent with this opinion.

CLIFFORD, J. dissenting. Once again the Court chips away at the going-and-coming rule, eroding it in one breath and vouchsafing it endurance in the next. While the rule is accorded lip service with the not very comforting reassurance that it remains the law of this State, *ante* at 448, the fact is that this case moves us perceptibly beyond *Paige v. City of Rahway,* 74 *N. J.* 177 (1977), found by the majority to control today's decision, *ante* at 445–446. And it nudges us closer yet to the abolition of the going-and-coming rule for which, I submit, no better substitute has yet been fashioned.

*Paige* eschewed the technique of focusing on "the particular factual setting surrounding" the incident (there an assault), 74 *N. J.* at 180, relying instead on "the nature of petitioner's on call status [as] a sufficient basis for providing recovery." *Id.* That status, in Paige, was such that there the petitioner's obligation to his employer, after he had left his place of employment, was memorialized in specific and direct instructions requiring the employee in effect not to make a move without notifying the employer. He was "personally accountable" for the operation of the plant. So immediate and substantial was this accountability that the employer was relieved of the need to furnish an additional employee to supervise the shift during which petitioner was on call.

While I disagreed with the finding of compensability in *Paige,* even were I of a different view I would not find that case controlling. Here the petitioner's decedent, a manager in the respondent's electro-data processing department, was "expected to report to work from 8:30 to 4:30 every day, five days a week," in addition to which it was anticipated he would work overtime and respond to calls to return to the

plant "when necessary."[1] The over time work and returns to the plant totalled about 50 occasions in two and a half years, or a little more frequently than once every three weeks for these combined extra efforts. While his work with Fedders was given priority, decedent also had a part-time job as a computer operator at McGraw-Hill on Saturdays and Sundays. When the accident occurred, he was on his way home on a weekday at his customary time in order to have dinner and fulfill his stated intention of watching a television program.

The entirely unstructured "on-call" status in this case is in sharp contrast to the precise constraints under which the petitioner in *Paige* was placed and the direct responsibility imposed on him. Decedent here labored under the same pressures as do most other lower or middle-level managerial employees. From time to time those pressures were translated into intrusions not uncommon to managers or, for that matter, countless other conscientious businessmen and professionals. The automobile accident which occurred on decedent's journey home for an evening of relaxation lacks, under the circumstances, even the most tenuous of connections with his employment.

For these reasons, as well as those set forth in Justice Schreiber's dissenting opinion in *Paige,* I would affirm the judgment below denying compensation.

Justice SCHREIBER joins in this opinion.

---

[1]There is no basis in the record for the majority's assertions that (a) decedent's "continued availability [was] essential to the operational efficiency of his employer's business * * *", *ante* at 451, and (b) "Sabat's ready accessibility to his subordinates for problem-solving purposes * * * presumably enabled Fedders to avoid the hiring of a person (or persons) of equivalent authority and expertise to supervise its computer operations beyond the conclusion of the regular workday." *Ante* at 450. Each is entirely speculative, there being not one word of testimony which would give rise to even a logical inference supporting either proposition.

454

*For reversal and remandment*—Justices MOUNTAIN, SULLIVAN, PASHMAN and HANDLER—4.

*For affirmance*—Justices CLIFFORD and SCHREIBER—2.