EILEEN MCKEEVER, PETITIONER-APPELLANT, v. N. J. BELL TELEPHONE CO., RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 15, 1980—Decided May 5, 1981.

Before Judges FRITZ, POLOW and JOELSON.

*Thomas W. Sharlow* argued the cause for appellant.

*Andrew Lawrie* argued the cause for respondent (*Lawrie and Jennings,* attorneys).

The opinion of the court was delivered by

FRITZ, P. J. A. D.

This appeal by the dependent from an adverse determination in her workers' compensation death dependency claim presents still another challenge to the adherence in New Jersey to the "going and coming" rule. The challenge is forthright. It seeks the adoption of a modification "so as to afford protection to a worker during a portal to portal trip from home to his place of employment and his return home trip." This effort must fail. Despite the infinite number of exceptions carved from it and its "rather limited applicability," *Briggs v. American Biltrite*, 74 *N.J.* 185, 190 (1977), the rule that accidents occurring during routine travel between the employee's home and his place of employment ordinarily do not arise out of and in the course of the employment—the so-called "going-and-coming" rule—is said by our court of last resort to persist. *Watson v. Nassau Inn*, 74 *N.J.* 155 (1977).[1] Indeed, the express "portal to portal" suggestion was rejected in *Watson. Id.* at 160. Regardless of the virtues of a contrary rule, obviously recognized by at least a minority of our Supreme Court, we may not contravene this clear holding of our court of last resort. *In re Education Ass'n of Passaic, Inc.*, 117 *N.J.Super.* 255, 261 (App.Div.1971), certif. den. 60 *N.J.* 198 (1972).

However, appellant has more than one arrow in her quiver. In a multifaceted presentation she insists that the circumstances of her deceased husband's employment were such as to preclude the finding of the judge of compensation here that this accident "did not arise out of and during the course of the employment." We are in agreement with this and accordingly, we reverse.

The nature of the accident presents no problems. The decedent, a corporate attorney for New Jersey Bell Telephone Company, was driving home from work when he was involved in a three-car collision on McCarter Highway in Newark. He died as a result of injuries sustained in the accident. He was driving his

---

[1]The cases are collected and considered at length in *Watson.*

own car and he was not reimbursed for traveling expenses. There is no suggestion that the locale of the accident represented any deviation from the most logical direct route between home and office, nor is there any hint of purpose other than one of returning home from work.

It is undisputed that decedent's brief case, supplied to him by his employer and in the car at the time of the accident, held handwritten notes pertaining to a matter on which decedent was currently working for his employer, in addition to such things as bulletins and pamphlets containing general information relating to the Bell Telephone System.

In his oral opinion dismissing the claim petition, the judge of compensation said:

> The petitioner strongly urges the fact that her husband was carrying the briefcase with some company documents in it, apparently, to be reviewed by her husband at home, as sufficient to bring this case within one of the exceptions. She relies primarily on *Paige v. The City of Rahway*, 74 *N.J.* 177 (1977) and *Sabat v. Fedders Corporation*, 75 *N.J.* 444 (1978) to support her contention of compensability. She contends that her husband's work at home and "on call" status of the employees in both of the above cases are substantially similar. With that I cannot agree. Mr. McKeever was not on call at anytime by New Jersey Bell Telephone Company. He brought material home with him to read, which he was not required to do at home, nor was he under any compulsion to report his activities, so that he could be found on a moment's notice. Doing work at home and being on call are not at all similar. The respondent well sets forth the test regarding work being done at home in *Sabat v. Fedders Corporation*, supra, footnote three, which states,
>
>> "We note that Sabat's employment situation differs dramatically from that of employees who take work home out of a sense of self-imposed moral obligation or self-perceived necessity arising out of an inability to keep up with their work load during their normal workday. The benefits of such activities are predominantly personal with only incidental enhancement of the efficient functioning of the employer enterprise. In such case the work connection is, without more, too attenuated to justify the imposition of the cost of off-duty injury on the employer."
>
> Furthermore, the mere fact that the decedent was carrying home material furnished by his employer is an insufficient basis upon which to award compensability. In *Morris v. Hermann Forwarding Company*, 18 *N.J.* 195 (1955), the Court stated the plaintiff further contended that Morris was "in the course of his employment" because he was carrying home work materials furnished to him by his employer. The mere fact that a claimant while going to work or home carries with him "some of the paraphernalia of his employment" does not in itself convert the trip from personal to employment activity.

> Therefore, the two contentions of the petitioner, one that he was carrying materials of his employer in his car and, two, that he was to do work at home that evening to benefit his employer, must be rejected. I have no alternative but to dismiss Claim Petition No. 77–28265, with prejudice, on the basis that the accident did not arise out of and during the course of the employment.

Appellant argues that this represented an inappropriately limited view of the testimony. She urges that it ignored the compelling work requirements of the attorney not only to complete a specific job assignment but also to continue professional competence by reading and the preparation of legal data for which there were simply not enough hours in the ordinary working day. She insists that the uncontroverted testimony demonstrates that the employment requirements could not be met without at-home work. We concur in this analysis.

We accept the proposition that the mere carrying home of "some of the paraphernalia of his employment" does not in and of itself render a commuting accident compensable, *Morris v. Hermann Forwarding Co.*, 18 *N.J.* 195, 200 (1955), although we observe that that decision was 4–3 and has not escaped doubtful reference in a statement questioning the basis for the going and coming rule. *Ricciardi v. Damar Products Co.*, 45 *N.J.* 54, 61 (1965). We are also aware, from the dictum in *Sabat v. Fedders Corp.*, 75 *N.J.* 444, 451 n. 3 (1978), that "a sense of self-imposed moral obligation or self-perceived necessity arising out of an inability to cope with their workload during their normal workday" will not justify work at home as sufficiently essential to render the commuting an activity arising out of and in the course of the employment. The circumstances of decedent's employment in the matter before us make any further consideration of those principles unnecessary.

■ We are firmly persuaded that the testimony in this case is susceptible of no other finding than that it was essential for the decedent to work at home in order to live up to his employer's expectations; that the employer, through such agents as the decedent's immediate supervisors, encouraged such activity, and that the decedent undertook this obligation con-

stantly with his employer's knowledge. Edward Evans, general attorney for the company, head of the general corporate section at New Jersey Bell Telephone Company and decedent's direct superior, testified that taking materials home was permitted by the company and that he knew decedent was doing this. He was then asked whether the practice was "actually encouraged." He responded:

I don't recall any specific policy or practice that encouraged it. As I indicated to you before, you really had to read as much as you could *if you wanted to do your job professionally.* So, you took it on to take matters home and read them if you couldn't get them done during the course of the day. [Emphasis supplied]

His testimony clearly demonstrated that reading respecting "the legal developments and company things that were changing within the company" was necessary. He denied that it was necessary to take these home but only on the basis "that he could have stayed after hours and read them at work." It is beyond cavil that there simply was not enough time in the day during which the decedent had to be "at work" for him to do all of that which was required of him by his employer and the employment.

Indeed, Mr. Evans testified to his requiring—he said, "I wanted them to read it"; he was decedent's superior—reading of material even though "the attorneys in my section don't have responsibility for it and don't actively participate in these matters on a daily basis." It is clear that the decedent was required not only to perform the work assigned to him, but to keep abreast of company topics despite the fact that required reading "did not have any direct bearing on [decedent's] day-to-day work activity."

The evidence is equally clear that the decedent lived up to his employer's expectations in this regard. His hours at home were not at the expense of his hours at his other place of employment: Evans testified that not all of the attorneys under his supervision worked 50 hours a week at the place of employment, but decedent did. His brief case went home with him every night. Because of these extra-office requirements he had a desk

in his bedroom and a small library. At the time of his death he was committed to a deadline on an antitrust matter and among the materials on that desk was a book entitled *Antitrust Problems and Trade Practices.*

The evidence permits no conclusion except that this was no mere carrying of "some paraphernalia" or "self-imposed moral obligation or self-perceived necessity." Our reading of the record convinces us this was a matter of continued professional survival at the New Jersey Bell Telephone Company.

Nor can it be said here, as was a principal concern in the *Sabat* footnote, *supra,* that the benefits of decedent's homework were "predominantly personal with only an incidental enhancement of the efficient functioning of the employer enterprise." The services rendered the employer by decedent in this matter were essential to the efficient functioning of the employer enterprise. That the employee received some personal benefit, either by way of increased professional knowledge or opportunity for advancement, in no way attenuates the work connection or minimizes the employer benefit. Even were it to be thought that the activity in this matter was designed primarily to serve the employee's interest—which it most assuredly is not—that fact alone would not exclude compensability under our concept of the controlling significance of some substantial benefit to an employer. *Watson v. Nassau Inn, supra,* 74 *N.J.* at 160; *Strzelecki v. Johns-Manville,* 65 *N.J.* 314 (1974). See the attention paid to the importance of mutual benefit in *Sabat v. Fedders Corp., supra,* 75 *N.J.* at 450; *Paige v. Rahway, supra,* 74 *N.J.* at 181, and *Briggs v. American Biltrite, supra,* 74 *N.J.* at 190 (1977).

We are satisfied the accidental death was compensable. We hold that when the employment expectations carry over to "off-duty" hours and away-from-work effort becomes essentially obligatory, the going-and-coming rule does not preclude compensability. *Sabat v. Fedders Corp.* and *Paige v. Rahway,* both *supra.* We fully recognize that the rule we thus enunciate

appears to be at odds with the reshaping in *Briggs v. American Biltrite, supra,* of the going-and-coming rule to limit it to "those routine daily trips to or from an employee's fixed place of business at specified hours at the beginning or end of the day" (at 190). The concern is more apparent than real, for the very next sentence in that opinion excepts from that declaration "special circumstances which suggest a connection with employment." All we have done is define one such set of special circumstances.

Our doing that is no more than reassurance of our obedience to the Supreme Court mandate that we not be hesitant "to make exceptions to the [going-and-coming] rule when the facts of a particular case have justly deserved a finding of compensability." *Watson v. Nassau Inn, supra,* 74 *N.J.* at 160. This is such a case.

Reversed and remanded for entry of judgment in favor of appellant.