Michael JACOME

v.

BONANZA BUS LINES, INC.

No. 85–132–M.P.

Supreme Court of Rhode Island.

June 17, 1987.

John Glaasson, Warwick, Michael Sahady, Fall River, Mass., for plaintiff.

Ralph Della Rosa, Law office of Kevin M. Cain, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This case comes before us on a petition for certiorari filed by Karen Jacome, wife of the decedent employee, to review a final decree of the Workers' Compensation Appellate Commission that denied the petitioner's claim for death benefits. Mrs. Jacome, as executrix of the estate of the deceased employee Michael Jacome, filed an original petition for benefits with the Workers' Compensation Commission. This petition, though filed as an original petition, was treated at all relevant times by all parties, including the Workers' Compensation Commission, as a petition for death benefits. We too shall treat it as a petition for death benefits.

The petitioner, Jacome, and respondent, Bonanza Bus Lines, Inc. (employer or Bonanza), filed an agreed statement of facts that was the factual basis for decision by the trial commissioner, the appellate commission and will be the factual basis for our review here. The facts may be summarized as follows. Michael Jacome, Karen's husband, was employed as a bus driver by Bonanza Bus Lines, Inc. On the night of October 29, 1982 at approximately 11:20 p.m., Jacome was driving, in his personal automobile, to his home from employer's Providence bus station when he was involved in a fatal auto accident that oc-

curred through no fault of his own. At the time of the accident, Jacome was still wearing his uniform and was carrying, in his car, a briefcase containing Bonanza fare receipts collected during this night's earlier Logan Airport-Providence bus run. He also had fare receipts collected during the previous night's run. It was necessary for bus drivers driving the Logan-Providence run to sell tickets and collect fares from passengers picked up at Logan because Bonanza maintained no ticket-office facilities there. The bus driver was then required to make a daily report accounting for those fares and turn that accounting and those fares into the ticket office at the Providence station. That ticket office, however, was closed between the hours of 12 midnight and 5 a.m. During this time no bus driver could turn in his fares and daily report and therefore had to keep them in his or her custody until the office was again open, subject to Rule 252 of the operative labor agreement between the bus drivers and employer. Rule 252 provides:

"*Turn In Allowance.* Operators required to make a daily report shall be paid an allowance of one dollar ($1.00) per each working day. This allowance is in addition to and not part of the regular work day pay. Operators will be allowed until 6:00 p.m. of the following day to turn in daily reports and remittance."

On the night in question Jacome arrived at the Providence station at about 11 p.m. On other nights that same week he arrived on two occasions at 11 p.m., two occasions at 12 a.m., and on one occasion at 1 a.m.

The parties also agreed that Jacome had taken no deviation from his usual route home on the night of October 29 and that for all times during his employ when he drove the Logan run, Jacome would drive directly home with his receipts, count them, on the average taking twenty minutes, and then return those receipts and report to the ticket office at Providence when he arrived for work the next day. Each bus driver was responsible for receipts while in his or her custody.

The decedent's wife as executrix of Michael's estate filed a petition for benefits with the Workers' Compensation Commission, alleging that her husband's death arose out of and occurred while in the course of his employment duties with Bonanza.

Commissioner Kando found, based upon the parties' agreed statement of facts, that the decedent's death did not arise out of and in the course of his employment. No causal connection or nexus was established that would take the case out of the going-and-coming rule. Once Jacome left employer's premises and began his journey home, or wherever he desired to go since he was free to do as he chose, the causal-relationship aspect was severed, thus benefits were denied.

The appellate commission affirmed the trial commissioner's findings of fact and his denial and dismissal of the petition for benefits. The commission independently examined the factual circumstances derived from the parties' agreed statement of facts and ultimately concluded that the death did not arise out of and in the course of his employment; therefore, the commission perceived no error on the part of the trial commissioner. The commission applied the going-and-coming-rule analysis and concluded that once employee left employer's premises, any risks he encountered on the drive home were incidental to his drive home, not to his employment.

Commissioner Gilroy in his dissenting opinion stated that the majority ignored the undisputed fact that at the time of the accident employee was the custodian of his master's proceeds, thus he was still fulfilling his employment duties. Therefore, the going-and-coming rule simply does not apply and petitioner should be awarded benefits.

The petitioner then took appeal to this court and argues here that the appellate commission erred when it strictly applied the going-and-coming rule to the instant matter and/or misapplied and misconceived the application of that rule and its exceptions in light of the agreed statement of facts. Ultimately, petitioner asserts that under a nexus or causal-connection analysis Mr. Jacome's injuries and death arose out

of and were in the course of his employment and therefore should be compensable.

■ When the factual circumstances are not in dispute and lead to only one permissible conclusion, then the question of whether the injury arose out of and in the course of the employment will be treated as a question of law. *See DeNardo v. Fairmount Foundries Cranston, Inc.*, 121 R.I. 440, 443–49, 399 A.2d 1229, 1231–34 (1979). Thus we shall review on appeal the legal effect of these undisputed facts as to whether this petitioner's injuries and death are to be compensable. *See Kyle v. Davol, Inc.*, 121 R.I. 79, 80–81, 395 A.2d 714, 714 (1978); *Boullier v. Samsan Co.*, 100 R.I. 676, 679, 219 A.2d 133, 135 (1966); *see also Buonauito v. Ocean State Dairy Distributors, Inc.*, 509 A.2d 988, 990 (R.I. 1986).

"We have repeatedly held that the question of whether an injury can be said to have arisen out of and in the course of the employment depends upon the particular facts and circumstances of each case." *D'Alessio v. State*, 509 A.2d 986, 987 (R.I. 1986) (citing *Lima v. William H. Haskell Manufacturing Co.*, 100 R.I. 312, 215 A.2d 229 (1965)).

We also recognize that a strict application of the going-and-coming rule may engender harsher results than the Workers' Compensation Act was intended to beget; therefore, we shall examine the circumstances surrounding the injury to determine whether they establish a nexus or causal relationship between the injury and the employment. *See Knowlton v. Porter Trucking Co., Inc.*, 117 R.I. 28, 30, 362 A.2d 131, 133 (1976); *see also Lima v. William H. Haskell Manufacturing Co.*, 100 R.I. at 314, 215 A.2d at 230. Thus " [c]ompensation is not to be denied merely because the employee's injury occurred off the premises or at a time other than his regular working hours * * *,' " *D'Alessio*, 509 A.2d at 987, if a sufficient nexus or causal relationship is shown to exist.

The basic analysis in determining whether a sufficient nexus exists is twofold. "If the injury results from a risk involved in the employment or incident thereto or to the conditions under which it is required to be performed then it is said to 'arise out of' the employment. If the injury occurs within the period of employment at a place where the employee may reasonably be while he is fulfilling the duties of employment then it is said to be 'in the course of' the employment. Both of these requirements must be met by the claimant as a condition to recovery." *Knowlton*, 117 R.I. at 30–31, 362 A.2d at 133–34 (citing *Di Libero v. Middlesex Construction Co.*, 63 R.I. 509, 9 A.2d 848 (1939)).

In the case at bar, it is clear that the appellate commission considered the nexus test in analyzing the factual circumstances of this case. The commission, having found no adequate nexus, applied the going-and-coming rule and denied compensation. *See Knowlton*, 117 R.I. at 31, 362 A.2d at 134 ("[i]f [the nexus] standards are not met in the situation where the employee is injured off the premises or at a time other than during his regular working hours then the 'going-and-coming' rule applies and compensation is denied").

■ However, even if we were to agree with petitioner's contention that the commission misapplied the nexus test in light of the stipulated facts, our analysis of the legal effect of these facts under the nexus test gives rise to the same ultimate legal conclusion. Based upon these particular facts and circumstances, the petitioner is not entitled to workers' compensation benefits under our law.

On the night in question, Jacome arrived at the Providence station at approximately 11 p.m. On the average, it took petitioner twenty minutes to count his fares and fill out his daily report. This particular night he collected $29 in fares that he had to account for, thus he could easily have completed his accounting and filed the same with the ticket agent before that office closed at 12 a.m. Instead, Jacome elected to take his fares home and do his accounting there, which he had the option to do under Rule 252. It is clear, however, that he was not required to do this work at home by contractual agreement, nor was he forced or compelled to do so by the particular circumstances incident to the

conditions or performance of his employment.

Although it also appears that the risks Jacome encountered on his drive home were generally the same as those he would encounter while driving the bus, he was not driving his bus for the company at the time of the accident, nor did he have any passengers who had contracted with him or the company for transportation purposes. He was driving to his home in his personal automobile. Any risks he encountered there were risks all drivers in the general public regularly assume. There was nothing special about this particular trip home that would make the traveling aspect of the trip a special or emergency mission for the benefit of employer.

Further, the company exerted no control over employee once he left the premises: no designated route and, even more generally, no requirement or control over where or what employee did once leaving employer's premises.

As we said in *Kyle v. Davol, Inc.*, "[W]hile admittedly the employment is the cause of the workman's journey between his home and the factory, it is generally taken for granted that workmen's compensation was not intended to protect him against all the perils of that journey." 121 R.I. at 81–82, 395 A.2d at 715, (quoting 1 A. Larson, *The Law of Workmen's Compensation* § 15.11 at 4–3 (1978)). Thus without some established nexus, the trip is not generally covered under workers' compensation law.

The petitioner cites as supporting authority for her position *McKeever v. N. J. Bell Telephone Co.*, 179 N.J. Super. 29, 430 A.2d 247 (1981) and *Cook v. Bangor Hydro-Electric Co.*, 402 A.2d 64 (Me. 1979); however, with respect to the case at bar, the cases are clearly distinguishable. In *McKeever* a company attorney was killed in an auto accident while driving from his work situs to his home. Recovery was allowed based upon the fact that the evidence portrayed circumstances in which "the employment expectations carr[ied] over to 'off-duty' hours and [the] away-from-work effort be[came] essentially ob-

ligatory * * *." *McKeever*, 179 N.J. Super. at 35, 430 A.2d at 251. The evidence showed that his supervisors expected the decedent to keep abreast of the latest legal developments and company topics even though that required reading did not concern the decedent's day-to-day work activities. Further, there was not time during regular work hours to perform this reading. "The evidence permits no conclusion except that this was no mere carrying of 'some paraphernalia' or 'self-imposed moral obligation or self-perceived necessity.'" *Id.* at 35, 430 A.2d at 250. The factual circumstances in the case at bar clearly do not rise to this level of employment compulsion.

In *Cook* an off-duty lineman from the power company was electrocuted while assisting an on-duty employee in an electrical repair. Cook, while off duty and relaxing at his camp at Pushaw Pond, noticed a burning tree limb as a result of its contact with a primary power line. Cook called Evans, the on-duty lineman during that weekend, and told him to come up and he, Cook, would show Evans where the trouble was located. The evidence also shows that Cook and Evans had worked together in the past as a pair during the normal working weeks. When Evans arrived, Cook "reacted in exactly the same manner as if he were Evans's partner when they reached the trouble spot." *Cook*, 402 A.2d at 65. While working together, the wire accidentally touched part of the truck, electrocuting Cook, who was nearby. The court in *Cook* essentially relied on a theory that "[a]n act outside an employee's regular duties which is undertaken in good faith to advance the employer's interest, whether or not the employee's own assigned work is thereby furthered is within the course of employment." *Cook*, 402 A.2d at 66 (quoting 1A A. Larson, *The Law of Workmen's Compensation* § 27.00 (1978)). The court further stated that "[t]he emergency made prompt action desirable to protect the employer's interests, and the off-duty employee voluntarily performed a normal function of his employment in helping his fellow lineman to remedy the dangerous situation." *Cook*, 402 A.2d at 66. Clearly no

such emergency or need arose in the instant case that would have required employee to perform his normal employment functions.

The mere fact that at the time of the accident Jacome was carrying work proceeds in his personal automobile during his trip home without some greater degree of employment compulsion and/or control over the travel itself or the necessity for that travel, is insufficient as a causal relationship to trigger workers' compensation.

■ This court has long recognized that although the act's provisions must be given a liberal construction with an eye to effectuating their evident humanitarian purpose, that is, to afford a degree of economic relief and rehabilitation to those who are casualties of our industrial work by making compensation payment part of the cost of production, *see DeNardo*, 121 R.I. at 451–52, 399 A.2d at 1236 (Kelleher, J., concurring), the act was never intended to provide general health and accident insurance. *See Bissonette v. Federal Dairy Co.*, 472 A.2d 1223, 1227 (R.I. 1984); *Peloquin v. ITT*

*Hammel-Dahl,* 110 R.I. 330, 332, 292 A.2d 237, 239 (1972); *Geigy Chemical Corp. v. Zuckerman,* 106 R.I. 534, 541, 261 A.2d 844, 849 (1970); *DeLallo v. Queen Dyeing Co.,* 73 R.I. 325, 331, 56 A.2d 174, 177 (1947).

In the case at bar, Jacome's unfortunate demise neither arose out of nor occurred in the course of his employment.

Consequently, Mrs. Jacome's petition for certiorari is denied and dismissed. The writ heretofore issued is hereby quashed, the final decree of the Workers' Compensation Commission is affirmed insofar as it is consistent with this decision, and the papers in the case are remanded to the appellate commission with our decision endorsed thereon.